GOODLOE *v.* STATE OF INDIANA.

[No. 168 S 9. Filed December 9, 1969.]

*William C. Erbecker,* of Indianapolis, for appellant.

*John J. Dillon,* Former Attorney General, *Dennis J. Dewey,* Former Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged by an indictment filed December 29, 1966, with the crime of manslaughter as defined by Acts 1941, ch. 148, § 2, p. 447, being Ind. Ann. Stat. § 10-3405 (1956). To this charge appellant entered a plea of not guilty.

The cause was tried before a jury on September 25 and 26, 1967, and appellant was found guilty as charged. On October 13, 1967, the trial court sentenced appellant to the Indiana Women's Prison for a term of not less than two (2) nor more than twenty-one (21) years.

On October 24, 1967, appellant filed an amended motion for a new trial complete with supporting memorandum. This motion was overruled by the trial court on November 21, 1967. On appeal appellant's sole Assignment of Error is that the trial court erred in overruling the amended motion for a new trial.

The statute under which appellant was charged, § 10-3405 *supra,* reads in pertinent part as follows:

"Whoever voluntarily kills any human being without malice, express or implied, in a sudden heat, or involuntarily in the commission of some unlawful act, is guilty of manslaughter, and on conviction shall be imprisoned not less than two (2) years nor more than twenty-one (21) years."

The indictment charging appellant with the above crime reads as follows:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that SHIRLEY MAXINE GOODLOE on or about the 21st day of NOVEMber, A.D. 1966, at and in the County of Marion and in the State of Indiana did then and there unlawfully, feloniously and voluntarily kill one PAUL W. GOODLOE, a human being, in a sudden heat, but without malice, by then and there unlawfully, feloniously, and voluntarily, but without malice, shooting at and against the body of the said PAUL W. GOODLOE with a shot gun loaded with gunpowder and

metal pellets, then and there held in the hands of the said SHIRLEY MAXINE GOODLOE, and did then and there and thereby inflict mortal wounds in and upon the body of the said PAUL W. GOODLOE of which mortal wounds the said PAUL W. GOODLOE then and there and thereby died; and so the Grand Jurors aforesaid upon their oaths aforesaid, do say and charge that the said SHIRLEY MAXINE GOODLOE, in the manner and form and by the means aforesaid, unlawfully, feloniously and voluntarily but without malice, in a sudden heat, did kill the said PAUL W. GOODLOE, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

From the evidence adduced at trial it appears that sometime during the evening of November 20, 1966, appellant and her husband, Paul W. Goodloe, the victim, engaged in a violent argument concerning appellant's refusal to perform an unnatural sex act with him. According to the appellant's testimony, her husband had, at various times, demanded that she perform the act with him, but she had always refused. However, on the night in question her husband attempted to force her into submission. She struggled with him and managed to free herself and run into another room.

Appellant testified that the next morning, November 21, 1966, her husband was rude and insolent, and still angry over the affairs of the previous evening. Upon leaving for work he threatened to shoot appellant's children by a previous marriage "in the mouth". Later that morning he called the appellant and threatened her and the children over the phone. According to appellant he said, "I'll take care of all of you when I get home." She also stated that he threatened to "kill and wipe out from the biggest and me on down." After the phone call the appellant called the police, but they informed her that they could take on action.

At approximately 5:00 p.m. on November 21, 1966, Paul Goodloe returned home from work. He approached the house talking quite loudly, and said "I meant what I said over the phone, and I'm intending to do it and I'm going to do it."

Hearing her husband, the appellant got a shotgun that was in a nearby closet. When she heard the key in the door, appellant fired through the door at her husband.

When the police arrived at the scene at approximately 5:52 p.m. Paul Goodloe was still alive and was in the back seat of his car. He was described as bleeding profusely from a shotgun wound in the chest. He died several days later from a combination of bronchial pneumonia and peritonitis, which, in the opinion of the doctor who performed the autopsy, "he became a candidate for because of the gunshot wound."

Appellant's amended motion for a new trial contains eleven separate specifications of error. In appellant's brief, however, counsel argues only four grounds for reversal. These are: 1) the verdict of the jury is not sustained by sufficient evidence; 2) the evidence was insufficient to establish the cause of death, thus depriving the appellant of the right to effectively cross-examine the State's expert witness and prove the existence of an intervening cause of death; 3) the evidence was insufficient to prove the corpus delicti; 4) the court erred in admitting the extra-judicial statements of the appellant over the objection of appellant's counsel.

In view of the determination that we are compelled to make we will address ourselves only to proposition four (4) above.

At trial the arresting officer testified that after finding the decedent he went to the appellant's home and began to question her about her husband. Appellant's counsel objected on the grounds that the officer had not advised the appellant of her constitutional rights as mandated by *Miranda* v. *Arizona* (1966), 384 U. S. 436. The objection was sustained. The State then asked the witness if he advised the appellant of her rights. He testified that he did. The State then asked the witness to relate what he told the appellant, and he answered as follows:

"I told her—after I arrested her, I told her that she was arrested for Assault and Battery With Intent to Kill. I

advised her that she did not have to make any statement to me whatsoever, and if she did, it would be used against her in court. I advised her that if she didn't have any money for an attorney the state would furnish her an attorney. I asked her what her education consisted of and she said a high school education."

Over the objection of appellant's counsel, the witness was then allowed to relate a conversation that he had with the appellant concerning the shooting of the decedent. He testified that the appellant told him that she shot her husband through the door with the shotgun when she heard him put the key in the door.

It is appellant's contention that the arresting officer inadequately advised the appellant of her constitutional rights in that the statement made to the appellant by the arresting officer did not fully comply with the requirements set forth in *Miranda* v. *Arizona, supra.* Appellant contends that since the warning was inadequate it was reversible error to allow the State's witness to testify as to what the appellant told him subsequent to her arrest.

The issue raised by appellant concerns the requisite procedure to be followed prior to the interrogation of a suspect whose freedom is being significantly restrained by the authorities. This issue is controlled by the decision of the Supreme Court of the United States in *Miranda* v. *Arizona, supra.* In laying down the rules to be followed during custodial interrogation of suspects, the Supreme Court said:

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subject to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, *the following measures are required.* He must be warned prior to any questioning that he has the right to remain silent, that anything he says may be used against him in a court of law, that he has the right to the presence of an

attorney, and that if he cannot afford an attorney one will be appointed for him *prior to any questioning* if he so desires. * * * unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Miranda* v. *Arizona* (1966), 384 U. S. 436, 478, 479.

We note at the outset that appellant did not waive her constitutional safeguards. This is conceded by the State at page fourteen (14) of its brief. It is the contention of the State, however, that the arresting officer's statement to the appellant advising her of her rights complied with the requirements set down in *Miranda* v. *Arizona, supra.* With this we do not agree.

The Supreme Court stated in *Miranda* that "the following measures are *required.*" (Emphasis added). Two of the required measures are: 1) That the interrogating officer must inform the suspect that "he has the right to the presence of an attorney; 2) That if he cannot afford an attorney one would be appointed for him prior to any questioning." (Emphasis added). In comparing the statement of the arresting officer advising the appellant of her rights with the warning required under the *Miranda* rule it is clear that all of the *Miranda* requirements were not met. *Miranda* requires that the accused be advised that he has the right to the *"presence"* of an attorney. The appellant, however, was only advised that the State would pay for an attorney if she could not afford one. She was not advised of her right to the *"presence"* of an attorney. To a layman inexperienced with the law, the statement that the State would "furnish her an attorney" if she could not afford one is susceptible to several meanings. An obvious interpretation of the statement is that the State would furnish her with an attorney during the trial of the cause. The statement was not sufficient to inform the appellant that she had the right to the presence of an attorney *during the interrogation* as required by *Miranda* v. *Arizona, supra,* in which the Court said:

"Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to

consult with a lawyer *and to have the lawyer with him during interrogation* under the system for protecting the privilege we delineate today." (Emphasis added). *Miranda* v. *Arizona* (1966), 384 U. S. 436, 472.

Clearly, the statement that the State would "furnish her with an attorney" did not clearly inform the appellant of her right to have an attorney present with her during interrogation. As the Supreme Court stated:

"* * * this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of the right will suffice to stand in its stead." *Miranda* v. *Arizona* (1966), 384 U. S. 436, 472.

Further, there was no attempt by the arresting officer to inform the appellant that she had a right to an attorney *prior to* interrogation. He merely informed her that the State would "furnish her an attorney" if she did not have the money for one.

Thus, the pre-interrogation warning given to the appellant by the arresting officer falls far short of the requirements laid down by the Supreme Court of the United States in *Miranda* v. *Arizona, supra.* At best, the warning merely advised the appellant that she had the right to counsel at some time. It did not expressly and clearly advise her that she had the right to the "presence" of a lawyer "during interrogation." It was therefore error for the trial court to admit into evidence the extra-judicial statement made by the appellant to the arresting officer without her first being warned of her constitutional rights in compliance with *Miranda* v. *Arizona, supra.*

Nor did appellant waive any objection to the admission of the statement by subsequently taking the witness stand and making essentially the same statement that she gave to the arresting officer. By the time she took the stand the jury had been advised through the testimony of the arresting officer that the appellant had acknowledged shooting

her husband. Counsel then had the option of either allowing the jury to retire with the knowledge that the appellant had admitted shooting her husband, or of calling the defendant to the witness stand in the hope of somehow mitigating the damage done by the admission of the objectionable testimony. The appellant was clearly prejudiced by the admission into evidence of the extra-judicial statements that she made to the arresting officer without first being adequately advised of her constitutional rights. Appellant could not thereafter waive the prejudicial error by attempting to mitigate the effect of the objectionable testimony by offering testimony to establish the defense of self-defense. The damage was done when the objectionable testimony was allowed into evidence, and the error could not be waived by subsequent attempts to mitigate its effect.

Accordingly, the judgment of the trial court is reversed and remanded with instructions to grant appellant's amended motion for a new trial.

DeBruler, C.J., concurs with opinion; Arterburn, J., dissents; Givan, J., concurs; Hunter, J., concurs with opinion.

CONCURRING OPINION

DeBRULER, C.J.—I concur fully in both aspects of the majority opinion. However, I believe the Court has the duty to proceed to determine whether or not the error was harmless beyond a reasonable doubt. *Chapman* v. *California* (1967), 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705; *Greer* v. *State* (1969), 252 Ind. 20, 245 N. E. 2d 158. There is no general formula for applying that test and each case must be decided on its own facts.

In this case the State's case-in-chief consisted solely of the dead body, a shotgun, and the police officer's testimony about appellant's admission that she had used the shotgun to shoot her husband. Appellant's case was based on self-defense. Clearly, without the erroneously admitted statement of appel-

lant, the State's case-in-chief would not have been sufficient to survive a motion for a directed verdict. When an erroneously admitted statement is an essential part of the State's case-in-chief, it can never be harmless beyond a reasonable doubt, because without it the appellant would not have had to present a defense of any kind. The erroneous admission worked a major change in the position of appellant. *Greer* v. *State, supra.*

## CONCURRING OPINION

HUNTER, J.—Appellant, Shirley Maxine Goodloe, is in my opinion, in that category of persons which the United States Supreme Court especially intended to protect in its landmark decision, *Miranda* v. *Arizona* (1966), 384 U. S. 436, 16 L. Ed. 694, 86 S. Ct. 1602.

Unlike the hardened criminal, the repeater, or the recidivist, most of whom are at least as acquainted with their constitutional rights as the officers who apprehend them, appellant was an ordinary citizen lacking any working knowledge of the Bill of Rights. Under the circumstances in this case, appellant clearly depends upon exactly what the police officer tells her in asserting her right against self-incrimination. She has neither the prior experience nor the independent knowledge to do otherwise. The professional criminal by contrast has been exercising this right for many years, long before the pronouncements in *Miranda.* He has gained valuable knowledge of this and other constitutional rights from his own experiences as well as those of his professional associates in crime. It is, therefore, incumbent upon both law enforcement officers and the courts to insure that a suspect like the appellant in the case at bar, is apprised of her constitutional rights carefully and correctly. Otherwise we would reward those who have led a life of crime and penalize those whose ignorance of the law derives from their compliance with it.

NOTE.—Reported in 252 N. E. 2d 788