### Clifton Willie Dickerson v. State of Indiana.

[No. 770S148. Filed January 5, 1972. Rehearing denied February 23, 1972.]

*Daniel A. Roby, Thomas L. Ryan,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Lon D. Showley,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by Clifton Dickerson from a judgment in the Allen Circuit Court convicting him of rape. Appellant waived a jury trial, and the cause was tried before the Honorable Ralph R. Blume, Special Judge, on March 6, 1970. Upon conviction, appellant was sentenced to the Indiana Reformatory for a term of not less than two (2) years nor more than twenty-one (21) years.

The sole issue presented on this appeal concerns the admission of certain statements into evidence which were made by appellant to the police during interrogation prior to arrest. Appellant contends that it was necessary to advise him of his constitutional rights prior to the interrogation as required by *Miranda* v. *Arizona* (1966), 384 U. S. 436, and that the warnings actually given by the police were inadequate to meet the *Miranda* standard. Therefore, it is contended by appellant that the statements obtained by the police should have been excluded at trial.

The events occurring prior to the interrogation, as revealed by the record, are as follows: On May 21, 1968, the Fort Wayne, Indiana, Police Department received a complaint for rape against the appellant. The following day, at the Fort Wayne Police Station, Robert Brunkhart, a Fort Wayne policeman, happened to see the appellant, who was present at the station on other business. The uncontradicted testimony of appellant at trial reveals that Brunkhart called to him and

said, "There's a complaint on you. Someone's filed a complaint on you about rape." Officer Brunkhart further stated, "I'd like to talk to you. You're not under arrest." Appellant consented to the request and followed Brunkhart to the interrogation room. Prior to the interrogation, appellant was presented with a printed form which was used by the Police Department to advise an individual of his constitutional rights. Appellant was asked to read the form, and, if he understood it, "to sign same." Appellant read the form, asked no questions, and signed a waiver of his constitutional rights.

The printed form which was presented to appellant reads, in pertinent part, as follows:

"Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. *We have no way of giving you a lawyer but one will be appointed for you, if and when you go to court and the court finds that you are a pauper.* If you wish to answer questions now without a lawyer present, you have the right to stop answering at any time. You also have the right to stop answering questions until you talk to a lawyer.

## WAIVER

I have read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer. I understand and know what I am doing. No pressure of any kind has been used against me." [our emphasis]

Brunkhart then proceeded to question appellant in regard to the complaint. Appellant admitted having been with the victim on the night the rape was allegedly committed, but he denied that he sexually assaulted her. At trial, appellant's statements made during the interrogation were admitted into evidence over objection.

Before going to the issue of whether the warnings given to appellant were adequate to advise him of his constitutional rights, we must first decide whether it was necessary to give them in the first place. More specifically, we must determine whether appellant was *in custody or otherwise deprived of his freedom of action in any significant way.*

"It is at this point that our adversary system of criminal proceedings commences, distinguishing itself at the outset from the inquisitorial system recognized in some countries. Under the system of warnings we delineate today or under any other system which may be devised and found effective, the safeguards to be erected . . . must come into play at this point." *Miranda* v. *Arizona, supra,* at 477.

The State contends that since appellant's presence at the station was not requested by the police, his presence there was wholly voluntary. Further, due to the fact that appellant was expressly told he was not under arrest and freely consented to the interrogation, the State takes the position that it was unnecessary to advise him of his constitutional rights prior to the interrogation. We do not agree.

It is true that appellant was not required to be present at the station on the day in question. However, appellant had gone there for personal reasons, wholly unrelated to this crime. He had certainly not gone to the police station to volunteer information or to be questioned concerning his commission of a crime. Appellant was stopped in the hallway and informed that a complaint had been filed against him. Although he was not placed under formal arrest, the officer expressed the desire to talk with appellant. Appellant consented and was led to the interrogation room for questioning. It is readily apparent that the interrogation at the police station was initiated by Officer Brunkhart. Thus it cannot be seriously contended that appellant was a "volunteer" in this matter. Furthermore, the circumstances under which the interrogation was conducted indicate that this was much more than a casual inquiry into the possibility of a crime. The com-

plaint for rape had been filed the previous day. Officer Brunkhart was aware of the nature of the alleged crime, the identity of the alleged victim, and he knew that the victim had identified the appellant as the assailant. It is apparent that the investigation had focused on appellant.

Although appellant was informed that he was not under arrest, it is abundantly clear that officer Brunkhart wanted to question him. We believe that an interrogation, initiated by the police and conducted in the compelling atmosphere of the interrogation room at the police station, at a time when the investigation had focused on the accused, constitutes circumstances which would indicate a significant deprivation of freedom so as to require the interrogating officers to advise the suspect of his constitutional rights. Apparently, Officer Brunkhart was of the same opinion because he presented appellant with the printed form prior to conducting the interrogation.

Appellant contends that the printed form advising him of his constitutional rights was misleading due to the language, "We have no way of giving you a lawyer but one will be appointed for you, if and when you go to court and the court finds that you are a pauper." It is argued that the above statement qualifies the statements immediately preceding it in the rights form which, in effect, state that a pauper has the right to have appointed counsel present during the interrogation.

In *Jones* v. *State* (1969), 253 Ind. 235, 252 N. E. 2d 572, this Court determined that a rights form, identical in language to the form used in the instant case, adequately informed the suspect of his constitutional rights. It is appellant's contention, however, that *Jones* v. *State, supra,* was overruled by our later decision in *Goodloe* v. *State* (1969), 253 Ind. 270, 252 N. E. 2d 788. We do not agree.

In *Goodloe* v. *State, supra,* we found that the warnings given were inadequate in that the police failed to expressly advise the accused of her *right to have an attorney prior to*

*and during the interrogation.* In *Goodloe,* the arresting officer testified that he advised the accused as follows:

> "I told her—after I arrested her, I told her that she was arrested for Assault and Battery With Intent to Kill. I advised her that she did not have to make any statement to me whatsoever, and if she did, it would be used against her in court. I advised her that if she didn't have any money for an attorney the state would furnish her an attorney. I asked her what her education consisted of and she said a high school education." 252 N. E. 2d at 790.

In holding that the above warning was inadequate, this Court stated:

> "The Supreme Court stated in Miranda that 'the following measures are required.' Two of the required measures are: 1) That the interrogating officer must inform the suspect that 'he has the right to the presence of an attorney; 2) That if he cannot afford an attorney one would be appointed for him prior to any questioning.' In comparing the statement of the arresting officer advising the appellant of her rights with the warning required under the Miranda rule it is clear that all of the Miranda requirements were not met. Miranda requires that the accused be advised that he has the right to the 'presence' of an attorney. The appellant, however, was only advised that the State would pay for an attorney if she could not afford one. She was not advised of her right to the 'presence' of an attorney. To a layman inexperienced with the law, the statement that the State would 'furnish her an attorney' if she could not afford one is susceptible to several meanings. An obvious interpretation of the statement is that the State would furnish her with an attorney during the trial of the cause. The statement was not sufficient to inform the appellant that she had the right to the presence of an attorney during the interrogation as required by Miranda v. Arizona. . . .
> . . . .
> "Further, there was no attempt by the arresting officer to inform the appellant that she had a right to an attorney prior to interrogation. He merely informed her that the State would 'furnish her an attorney' if she did not have the money for one." 252 N. E. 2d at 791.

The defects found in *Goodloe* are certainly not present in *Jones.* The printed rights form contains language which clearly

and expressly states that the accused has the right to counsel both prior to and during the interrogation. Therefore, appellant's contention that *Jones* v. *State, supra,* has been overruled is without merit.

In *Jones* v. *State, supra,* we adopted the following guidelines set out in *Coyote* v. *United States* (10th Cir. 1967), 380 F. 2d 305, to be used in determining whether the words used are adequate to inform the accused of his constitutional rights:

> "Surely Miranda is not a ritual of words to be recited by rote according to didactic niceties. What Miranda does require is meaningful advice to the unlettered and unlearned in language which he can comprehend and on which he can knowingly act. We will not indulge semantical debates between counsel over the particular words used to inform an individual of his rights. *The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all of his rights."* 252 N. E. 2d at 576 [our emphasis]

This Court is of the opinion, as we were in *Jones,* that the the language contained in the rights form is adequate to inform an accused of his constitutional rights. Some of the language objected to by appellant is certainly unnecessary, but we do not find that this language tends to confuse or qualify any of the necessary language contained in the form.

However, having determined that the language contained in the rights form is adequate, it does not necessarily follow that the appellant was adequately advised of his constitutional rights and that he knowingly and intelligently waived them. In *Miranda* v. *Arizona, supra,* the court stated:

> "If the interrogation continues without the presence of an attorney and a statement is taken, *a heavy burden rests on on the government to demonstrate that the defendant knowingly and intelligently waived his privilege* against self-incrimination and his right to retained or appointed counsel. Escobedo v. Illinois, 378 US 478, 490, note 14, 12 L ed 2d 977, 986, 84 S Ct 1758. This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 US 458, 82 L ed 1461,

58 S Ct 1019, 146 ALR 357 (1938), and we re-assert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders." 384 U.S. at 475. [our emphasis]

In its attempt to meet its burden of showing that the appellant knowingly and intelligently waived his constitutional rights, the State produced a signed waiver. A signed waiver is not conclusive however, and this Court is not precluded from reviewing all of the evidence in the record relating to this issue.

At trial, on direct examination, Officer Brunkhart testified as follows:

"Q. Before talking with him, did you advise him of his Constitutional rights?

A. Yes, sir. He signed a rights form. (At which time State's Exhibit 1 was marked for purposes of identification by the Reporter.)

Q. Sgt., I'll hand you now what's been marked for identification as State's Exhibit 1, and I'll ask you to look at it and tell the Court, if you can, what it is?

A. This is a rights form that the Police Department was using at this time for anybody that we did interview. *We did ask them to sign this that they did understand their rights.*

Q. Does that exhibit bear a signature?

A. Yes, sir.

Q. Whose signature is on it?

A. Clifton W. Dickerson, Sgt. Robert D. Brunkhart and Sgt. Charles Henderson.

Q. Now, the signature Clifton W. Dickerson, is that of the person who is the defendant, Clifton Willie Dickerson, in this case?

A. Yes, sir.

[Prosecutor] : At this time the State will offer into evidence State's Exhibit 1.

[Defense Counsel] : For what purpose is this being offered into evidence, may I inquire?

[Prosecutor] : For the reason that the defendant was advised of his rights and he understood them.

[Defense Counsel] : May I ask one question of voir dire?

THE COURT: You may do so.

## PRELIMINARY QUESTIONS

By: [Defense Counsel]

Q. Sgt., are these then the rights that the defendant was advised of before signing the waiver?

A. *He was asked to read that. If he understood it. If he did understand it, to sign same.*

Q. *And, these are all the rights he was advised of at the time he signed it?*

A. *Yes."* [our emphasis]

Officer Brunkhart's uncontradicted testimony reveals that appellant was merely presented with the rights form, told to read it, and then to sign it if he understood it. Brunkhart did not orally advise appellant of his constitutional rights, nor did he make any attempt to ascertain whether appellant understood the printed form. Moreover, it was misleading to instruct appellant to sign the rights form "if he understood it."

This Court is of the opinion that the above procedure is inadequate to comply with the requirements set forth by *Miranda* v. *Arizona, supra.* The interrogation was conducted at the police station in a formal manner. Officer Brunkhart should have given appellant a clear explanation of his constitutional rights, and then determined whether appellant clearly understood them. Appellant should not have been instructed to sign the form if he understood it, but rather should have been informed that he would be signing a waiver of his rights and that he should sign it only if he desired to answer questions at that time without the presence or advice of an attorney. A signature obtained with the instructions given by Officer Brunkhart is clearly not sufficient to indicate a knowing and intelligent waiver. To hold otherwise would be

to place the entire burden of understanding his constitutional rights on the accused, and additionally, to rely solely on the accused to clarify the contradictory instructions given by the police officer. Furthermore, we would be imposing this burden in a case where the police officer neglected to ascertain whether the appellant could actually read.

In *Jones* v. *State, supra,* the accused was orally advised of his constitutional rights in addition to being permitted to read the printed form. The printed form itself was actually read to the defendant. The defendant twice acknowledged that he understood his constitutional rights. The above facts led this Court in *Jones* to conclude that the defendant had been adequately informed of his constitutional rights and had knowingly, voluntarily and intelligently waived them when he signed the waiver. It is clear that the facts which were persuasive in *Jones* are not present in the instant case. It follows, therefore, that the statements obtained from appellant during the interrogation should have been excluded at trial.

Having found that the admission of appellant's statements into evidence was erroneous, we must next determine whether this error was prejudicial. We are of the opinion that it was not.

Once it is shown that a constitutional error has been committed, a rebuttable presumption arises that such error was prejudicial. The burden is on the State to demonstrate that the accused was in no way prejudiced thereby. *Harris* v. *State* (1968), 249 Ind. 681, 231 N. E. 2d 800; *Chapman* v. *California* (1967), 386 U.S. 18.

Appellant's statements to Officer Brunkhart do nothing more than place the appellant in the presence of the victim on the night the crime was committed. The State, however, produced an abundance of evidence in the form of eyewitness testimony showing that appellant was with the victim, Toni Lynn Jackson, on the night in question. The uncontradicted testimony of the State's witnesses, Emma Bearfield and Sharon Jackson,

both of whom were with the victim at the McCulloch Center, reveals that appellant called to the victim when she was outside the Center preparing to leave. The testimony further indicates that after conversing for a short time, appellant and Toni Lynn Jackson walked a short distance down the street away from the Center, the appellant holding the victim's arm behind her back. Her calls for help went unheeded because it was thought that appellant was not serious in his actions, as it was well-known that he and the victim were acquainted. The three girls had been in the process of leaving the Center for home and Miss Bearfield and Miss Jackson assumed that the appellant and the victim would follow. When it became apparent that appellant and Toni Lynn Jackson were not following, Emma Bearfield and Sharon Jackson returned to the Center in an unsuccessful effort to find them. This testimony fully corroborates the testimony given by the victim, Miss Toni Lynn Jackson.

As stated beforehand, this uncontradicted and unimpeached testimony places the appellant in the victim's presence on the night the crime allegedly occurred. It is also clear that he departed the Center with the victim, and that soon thereafter, neither the victim nor the appellant could be located in the immediate vicinity. Therefore, appellant's statements to Officer Brunkhart, which revealed only that appellant met the victim at the Center, and that she walked with him to his house where he picked up his coat, supplied information which was merely cumulative in nature, there being an abundance of similar evidence in the record showing that the couple departed the McCulloch Center together. Furthermore, if we disregard completely the testimony of Officer Brunkhart, all of the State's evidence clearly and convincingly indicates that a crime had been committed by the appellant, and this Court holds that the erroneous admission of appellant's statements constituted harmless error as those statements could not have in any way contributed to the guilty verdict reached by the jury. See *Chapman* v. *California, supra.*

It follows, therefore, that the judgment of the trial court must be affirmed.

Judgment affirmed.

Prentice, J., concurs. Givan, J., concurs in result with opinion in which Arterburn, C.J., concurs. DeBruler, J., concurs with opinion.

## CONCURRING OPINION

GIVAN, J.—I have concurred in the result in Judge Hunter's opinion in this case. However, I do not agree with his observation that the reading and signing of the waiver of his constitutional rights by the appellant was inadequate. I believe the record in this case clearly demonstrates that the appellant was fully and adequately advised of his constitutional rights.

Arterburn, C. J., concurs.

## CONCURRING IN RESULT

DeBRULER, J.—I concur in the result reached by Justice Hunter in this case, and agree that the waiver was inadequate. However, I do not agree that the warnings in this case were adequate as I have previously indicated in *Jones* v. *State* (1969) 253 Ind. 235, 252 N. E. 2d 572. When the accused is told that "we have no way of giving you a lawyer but one will be appointed for you, if and when you go to court and the court finds that you are a pauper," he is effectively told that he can talk now or remain in custody—in an alien, friendless, harsh world—for an indeterminate length of time. To the average accused, still hoping at this stage to be home on time for dinner or to make it to work on time, the implication that his choice is to answer questions right away or remain in custody until that nebulous time "if and when" he goes to court is a coerced choice of the most obvious kind.

Furthermore, the printed warnings clearly imply that a lawyer will be helpful during questioning but would be unable to prevent the questioning. The accused is told that "you have the right to talk to a lawyer for advice before we ask you any

questions, *and to have him with you during questioning,*" and later "you also have the right to stop answering questions until you talk to a lawyer." (Emphasis added.) Thus, the accused is left with the impression that he can answer questions right away and possibly be released, or wait an indeterminate length of time in custody until a lawyer can be appointed to be with him while he is questioned. It is true that he is told that "you have the right to remain silent," but this simple statement does not and cannot convey the important protection of the Fifth Amendment to the accused, namely, that he has an absolute right not to answer questions at any time. This single sentence is especially inadequate where the remainder of the warning implies that a lawyer could only help him answer the question and not prevent any questioning.

NOTE.—Reported in 276 N. E. 2d 845.