JERRY L. WOLLAM *v.* STATE OF INDIANA.

[No. 1176S413. Filed September 15, 1978.]

*Sharon Carroll Clark, Gregg and Clark,* of Anderson, for appellant.

*Theodore L. Sendak,* Attorney General, *Dennis K. McKinney,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged by information with First Degree Murder, Ind. Code § 35-13-4-1 (Burns 1975), for the March 1975 shooting death of his ex-wife, Candy Wollam. Following a trial by jury, he was found guilty of Second Degree Murder, Ind. Code § 35-1-54-1 (Burns 1975) and was sentenced to not less than fifteen, nor more than twenty-five years imprisonment. This direct appeal presents the following issues:

(1) Whether there was sufficient evidence to sustain the jury's verdict.

(2) Whether the defendant's written confession was obtained in violation of the Fifth and Sixth Amendments, and erroneously admitted into evidence.

(3) Whether certain items of evidence were obtained in violation of the Fourth Amendment, and erroneously admitted into evidence.

(4) Whether the trial court committed error by not allowing witnesses for the defense to testify concerning the decedent's immoral character.

(5) Whether the trial court erred by not allowing into evidence certain photographs offered by the defendant.

(6) Whether the trial court committed error by denying Defendant's motion for a mistrial.

(7) Whether the trial judge's demeanor was prejudicial to the defendant.

(8) Whether certain items of evidence were erroneously admitted into evidence over Defendant's objection that they lacked relevance and were repetitious.

(9) Whether certain items of evidence were erroneously admitted without first establishing a complete "chain of custody."

## ISSUE I

Defendant argues that the evidence of guilt is not sufficient to sustain the jury's verdict, and claims that the State failed to prove the elements of malice and purpose. In order to establish the elements of second degree murder, the State must prove that the defendant purposely and maliciously killed a human being. *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686.

Upon a review of the evidence, this Court will look only to the evidence favorable to the State, along with all reasonable inferences to be drawn therefrom. *Baum* v. *State,* (1976) 264 Ind. 421, 345 N.E.2d 831. We will not weigh the evidence or judge the credibility of the witnesses. *Rosell* v. *State,* (1976) 265 Ind. 173, 352 N.E.2d 750. The verdict will not be disturbed if it is supported by substantial evidence of probative value. *Baum* v. *State, supra.*

When viewed most favorably to the State, the evidence supports discloses the following:

Although the defendant and the decedent were divorced, they had been maintaining a connubial and stormy relationship. When the decedent moved from a mobile home into an apartment, the defendant stayed in a nearby motel. He had intended to move in with the decedent as soon as she broke off her most recent affair with another man.

On the morning of the shooting, the defendant arrived at the apartment and had coffee with the decedent. They began to argue about money and other men, but the argument abated when it was realized that their son was late returning from kindergarten and the defendant went to look for him. Defendant and the child returned to the apartment and the argument resumed. Decedent demanded money for her

sexual favors and unfavorably compared the defendant's sexual prowess with that of her other lovers. He became incensed, grabbed a .22 caliber sawed-off rifle, and shot the decedent several times.

There were no witnesses to the shooting, all evidence relating to the shooting and the events leading thereto came from the defendant himself, and he related different versions at different times.

The major inconsistency in Defendant's story concerns the murder weapon. After his arrest, Defendant gave a statement to the police in which he stated that he had purchased the .22 rifle and sawed off the barrel and the stock at the decedent's request, and that this sawed-off rifle had been in the decedent's possession for two weeks prior to the shooting. This is the same version that he related at trial. Shortly after giving such statement to the police, however, he gave a second statement in which he stated that the decedent had not been in possession of the rifle but that he had brought it with him, hidden in his coat, when he came to the apartment on the morning of the shooting.

Defendant admitted that he acted deliberately but disputes that malice and purpose were proven. Malice and purpose may reasonably be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm. *Horton* v. *State*, (1976) 265 Ind. 393, 354 N.E.2d 242; *White* v. *State*, (1976) 265 Ind. 32, 349 N.E.2d 156. Here, there was substantial evidence of probative value to support the jury's finding that the defendant acted with purpose and malice.

## ISSUE II

Defendant made two incriminating confessions which were reduced to writing and signed by him. He moved to suppress these statements and objected to their admission at trial. It is argued that the police failed to comply with the procedures

which have been established to safeguard Fifth and Sixth Amendment rights, and that the confessions were not voluntarily made.

Upon a review of the denial of a motion to suppress a confession and the subsequent admission of that confession over objection, this Court will not weigh the evidence or judge the credibility of witnesses. The admissibility of a confession ultimately depends upon questions of fact which are to be resolved by the trial court. *Works* v. *State,* (1977) 266 Ind. 250, 362 N.E.2d 144; *Layton* v. *State,* (1973) 261 Ind. 251, 301 N.E.2d 633. If the evidence is conflicting, only that evidence which tends to support the trial court's ruling will be considered upon appeal. *Riggs* v. *State,* (1976) 264 Ind. 263, 342 N.E.2d 838; *Cowell* v. *State,* (1975) 263 Ind. 344, 331 N.E.2d 21; *Rogers* v. *State,* (1974) 262 Ind. 315, 315 N.E.2d 707. If the trial court's ruling is supported by substantial evidence of probative value, it will not be disturbed. *Works* v. *State, supra.*

Looking to the non-conflicting evidence and the evidence in support of the trial court's ruling, it appears that following the shooting the defendant telephoned the police and informed them of what he had done. He waited outside the apartment for the arrival of the police. When Officer Mills appeared upon the scene, Defendant waived at him and informed him that he was the man who had called. Mills advised the defendant of his constitutional rights and placed him under arrest.

While Mills was transporting the defendant to the police station, Defendant began to gasp for breath and experienced chest pains. Mills delivered him to the St. Johns Hospital emergency room where he was injected with fifty miligrams of Listeral to calm him. He was released from the hospital after approximately forty minutes, and Mills then drove him to the police station. During the trip, Mills conversed with the defendant, who appeared to Mills to be normal and co-

herent. Mills told the defendant that he should have a lawyer, but Defendant responded that he did not want one.

Upon arrival at the Anderson Police Department, Mills delivered the defendant to the custody of Sgt. Helton. The defendant was again advised of his constitutional rights, and the defendant agreed to give a statement. He signed a written waiver of rights, which was witnessed by Sgt. Helton and Officer Mills. He was then interrogated for approximately two hours, and his statement was reduced to four typewritten pages. The defendant read the written statement and signed it. There were numerous typographical errors and corrections through the body of the typewritten statement, and Defendant initialed each correction.

Shortly thereafter, the defendant was informed that his statement was not believed. He was again advised of his constitutional rights, he again waived them and gave a second statement, correcting the first. This second statement was also typewritten and signed by the defendant.

Defendant first argues that he was not properly advised of his constitutional rights as is required by *Miranda* v. *Arizona,* (1966) 384 U.S. 436, 76 S.Ct. 1602, 16 L.Ed.2d 694. It is specifically argued that the defendant was not advised that he had a right to an attorney during the interrogation.

The advisement of rights which was printed upon the waiver form signed by the defendant states, "I, the undersigned, have been informed as to my constitutional rights, that I am entitled to legal counsel present at all times * * *." Furthermore, Sgt. Helton testified that he advised the defendant of his right to have an attorney present during the interrogation, and that if he wished to have an attorney, but could not afford one, one would be appointed before any questioning. According to Helton, the defendant stated that he did not want an attorney. (Supp. R. 48)

In this regard, the advisement of rights given to the de-

fendant complied with *Miranda* v. *Arizona, supra,* and *Goodloe* v. *State,* (1969) 253 Ind. 270, 252 N.E.2d 788.

Next, Defendant argues that his confessions were not made voluntarily, under all of the circumstances. This is based upon Defendant's contention that the fifty miligrams of Listeral which had been injected at the hospital deprived him of his free will.

In *Beecher* v. *Alabama,* (1967) 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35, the defendant had been shot in the leg and seriously wounded during his capture. While he lay helpless upon the ground, a police officer fired his pistol into the ground inches from the defendant's ear. The officer demanded that the defendant confess, and threatened to shoot him in the head. Defendant confessed. Later, while the defendant was in the hospital and sedated with morphine, the police obtained a signed confession which was admitted at trial. The United States Supreme Court held the written confession to have been made involuntarily.

In *Townsend* v. *Sain,* (1963) 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, the ailing defendant had been sedated with hyoscine, which had the properties of "truth serum." Even though the police were ignorant of the drug's effect, the Court stated:

"It is not significant that the drug may have been administered and the questions asked by persons unfamiliar with hyoscine's properties as a 'truth serum', if these properties exist. Any questioning by police officers which *in fact* produces a confession which is not the product of a free intellect renders that confession inadmissible." 372 U.S. 293, 308-309.

Here, the defendant testified at the suppression hearing and at trial, and he never asserted that the injection affected his thinking or his will. A registered nurse testified at the suppression hearing that fifty miligrams of Listeral would have no effect upon a person's mind, and that Listeral was generally used to abate nausea. All of

the police officers who testified concerning the defendant stated that he appeared to be normal. The evidence clearly sustains the trial court's ruling that Defendant's confession was voluntary.

## ISSUE III

Defendant asserts that the written consent to search signed by him at the time he signed the written waiver of Fifth and Sixth Amendment rights, was obtained against his will or as a result of his ignorance. He relies upon this Court's ruling in *Pirtle* v. *State,* (1975) 263 Ind. 16, 323 N.E.2d 634.

In *Pirtle,* the defendant's consent to the search was obtained while he was being held in custody following his express request to consult with an attorney. Following a request for an attorney, the police should suspend any interrogation or attempts to obtain the defendant's consent to a search, until an attorney is supplied. Here, however, there is probative evidence that the defendant never requested an attorney, that at one time the defendant stated that he did not want an attorney, and that he voluntarily waived his Fifth and Sixth Amendment rights. Defendant was fully advised of his constitutional rights as mandated by *Miranda* v. *Arizona, supra.* He was also advised that any evidence obtained from a search which he might consent to, would be used as evidence against him in court.

Defendant's argument concerning the involuntariness of the consent again depends upon the effect which the injection of Listeral had upon his ability to resist the inherent coercion of a custodial interrogation. As was discussed, *supra,* there was substantial evidence that the injection of Listeral had no adverse effect upon the defendant's will, and this Court must defer to the judgment of the trial court that the consent was voluntary.

## ISSUE IV

In several instances Defendant sought to introduce testimony concerning the decedent's bad character, and following

the trial court's rejection of such evidence, he properly reserved the issue for appeal by making offers to prove. The offered testimony would have shown that the decedent engaged in promiscuous sexual activity, during a period when the defendant and decedent lived together following their divorce and that Defendant was aware of such activity.

The offered testimony had no relevance. The defendant asserted no recognized defense of excuse or justification for the killing, but claimed that he was guilty only of voluntary manslaughter. For a charge of murder to be reduced to voluntary manslaughter, however, the defendant must have acted in reaction to a provocation which might have caused an ordinary person to act rashly, in a sudden passion, and without due deliberation. *See, Shutt* v. *State,* (1977) 267 Ind. 110, 367 N.E.2d 1376; *Miller* v. *State,* (1871) 37 Ind. 432; *Dennison* v. *State,* (1859) 13 Ind. 510. There is nothing to show that the provocation offered by the decedent upon the day of the killing was unusual in her continuing relationship with the defendant, and it logically would have evidenced a motive and that the defendant deliberated upon the decedent's prior conduct.

Nevertheless, Defendant was able to introduce in his own testimony evidence which was similar to that which was excluded. He stated that he had discovered the decedent and another man in bed together upon his return home, some time prior to the shooting. Defendant also testified that the decedent was accustomed to stay with other men for periods of up to four days, while he would care for the children by himself.

Considering the logical inferences to be drawn from the evidence which the defendant sought to have admitted, and considering that substantially similar evidence was admitted during Defendant's testimony, there was no prejudice to the defendant's case by the exclusion of the offered testimony.

## ISSUE V

Several pornographic photographs which were contained in the decedent's billfold at the time of her death were offered by Defendant and rejected by the court. No error was committed for the reasons outlined in Issue IV, *supra,* concerning evidence of the decedent's immorality. Furthermore, there was no showing that the defendant was aware of the photographs prior to the shooting.

## ISSUE VI

During the State's case in chief, the decedent's sister testified that the decedent once said in the defendant's presence that the defendant intended to kill her, and the defendant laughed. This testimony was properly admitted as evidence of a tacit admission by the defendant, an exception to the hearsay rule. *See Robinson* v. *State,* (1977) 266 Ind. 604, 365 N.E.2d 1218. The same witness was subsequently recalled to the stand and she changed her prior testimony by stating that the defendant was not present when the decedent had made her remark. Defendant then moved for a mistrial, which was denied, and the court admonished the jury not to consider the decedent's sister's testimony. Defendant predicates error upon the trial court's refusal to grant a mistrial.

The denial of a mistrial is largely within the sound discretion of the trial court, *Dewey* v. *State,* (1976) 264 Ind. 403, 345 N.E.2d 842, and its determination will not be disturbed upon appeal unless it appears to be clearly erroneous. Here, an admonishment to the jury was sufficient to cure any prejudice to the defendant. Indeed, there may be some question whether it was necessary for the trial court to admonish the jury to disregard the testimony. It appears that there existed a genuine issue of fact concerning the defendant's presence when the decedent stated that he intended to kill her. The witness testified that the defendant was present and later changed that testimony. Which testimony deserved credit was within

the jury's province, and the jury could have been so instructed. See *Robinson* v. *State, supra.*

## ISSUE VII

Due to defense counsel's tenacious attempts to introduce irrelevant evidence of the decedent's immoral character, it became necessary for the judge to sustain a number of objections to the admission of such evidence. Each objection to the evidence was met with an offer to prove which necessitated excusing the jury. On one such occasion, defense counsel remarked, " * * * I would appreciate it when the jury goes out if you don't give that grudging look. I think it can be misinterpreted." Defendant now seeks reversal because of the alleged "grudging look," because the judge asked the witnesses to verify the answers given by counsel in the offers to prove, and because the judge explained, " * * * at no time was there any gesture of impatience. The attorney for the defendant is quite—working quite hard and she is misinterpreting and reading things into the record that are not there."

The gestures and grudging looks, if any, are not contained within the record. The verification of counsel's offers to prove was proper, and the judge's comments were not made in the presence of the jury. Had these comments been made to the jury, they might have alleviated any harm that could have resulted from an unwitting display of impatience by the judge.

## ISSUE VIII

Defendant objected to the admission of twenty-one exhibits which were introduced by the State. These exhibits included three wine glasses, a cigarette lighter, a cigarette, and latent fingerprints, all of which were found in the decedent's apartment; the clothing worn by the defendant at the time of the shooting, several photographs of different parts of decedent's apartment, and two photographs of the decedent as she was

found after the shooting. Defendant objected to these exhibits upon the grounds that they were repetitious and irrelevant. Defendant points to no prejudice which might have resulted from the erroneous admission of any one of these exhibits, but rather argues that the arguably irrelevant evidence taken as a whole would give the jury the mistaken opinion that the State had a strong case.

Defendant has not presented a summary of the evidence relating to the admission of these many exhibits which is sufficient for the Court to determine whether the exhibits were or were not relevant. Certainly the photographs of the apartment were relevant to illustrate properly admitted testimony. Photographs are admissible as evidence of any thing to which a witness might himself be permitted to testify. *Carroll* v. *State*, (1975) 263 Ind. 696, 338 N.E.2d 264. But, even assuming that the exhibits were not relevant, the argument of cumulative prejudice resulting therefrom underestimates the intelligence of juries and it is not convincing.

## ISSUE IX

Defendant finally challenged the admission of several items of evidence upon the ground that the State failed to establish a "chain of custody" for each exhibit. The exhibits which were objected to include items of the defendant's clothing, the murder weapon, and shell casings.

Without considering the evidence tending to establish a proper chain of custody for each of these various exhibits, it is apparent that any error in their admission was harmless. The exhibits tended only to prove the connection between the defendant and the homicide, which the defendant admitted.

The only issue at trial was whether the defendant acted with premeditated malice. The exhibits which were objected to did not bear upon the issue of malice.

We find no reversible error. The judgment of the trial court is affirmed.

Givan, C.J. and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported at 380 N.E.2d 82.