ATTORNEY FOR APPELLANT: ATTORNEYS FOR APPELLEE:

MICHAEL B. TROEMEL STEVE CARTER

Lafayette, Indiana Attorney General of Indiana
 Indianapolis, Indiana

 JODI KATHRYN STEIN
 Deputy Attorney General
 Indianapolis, Indiana

 ZACHARY STOCK
 Deputy Attorney General
 Indianapolis, Indiana

 IN THE

 SUPREME COURT OF INDIANA

TIVERIO SERRANO LUNA, )
 )
 Appellant (Defendant below), ) 79S02-0212-CR-638
 ) in the Supreme Court
 v. )
 ) 79A02-0201-CR-33
STATE OF INDIANA, ) in the Court of Appeals
 )
 Appellee (Plaintiff below). )

 APPEAL FROM THE TIPPECANOE SUPERIOR COURT II
 The Honorable George Heid, Judge
 Cause No. 79D02-0007-CF-71

 May 14, 2003

SHEPARD, Chief Justice.

 Appellant Tiverio Luna drove himself to the police station because
the police asked to interview him about possible involvement in a child
molestation. Detectives interrogated him for about an hour, and Luna
confessed. He then drove himself home.

 The Court of Appeals held that Luna had been under arrest when he
confessed, and reversed his conviction because he had not been read his
Miranda rights. We conclude Luna was not under arrest and affirm his
conviction.

 Facts and Procedural History

 On July 24, 2000, ten-year-old E.G. spent the night at her friend
Arianna Luna’s home in Lafayette. The next day, E.G. accused Arianna’s
father, Tiverio Luna, of using his hands and mouth on her privates during
the early morning hours after he had returned home from work. The incident
was reported to the Lafayette Police Department and Child Protective
Services that same day, July 25.

 The following day, July 26, Detective Jay Rosen of the Lafayette
Police Department found Luna at work and asked him to come to the police
station for about an hour to tell his side of the story. Luna agreed and,
after some discussion, decided to drive himself to the police station.
Rosen told Luna both at the restaurant and at the station that he did not
have to talk to the police, that he was not under arrest, and that he was
free to leave at any time.

 At the station, Detective Rosen and Detective Tom Davidson
interviewed Luna in their office, which required a punch code to enter but
not to leave. Rosen and Davidson sat behind the desk in the office and
Luna sat on the opposite side, which was closest to the closed office door.
 The initial conversation, which was unrecorded, lasted about thirty-five
minutes. Luna initially denied E.G.’s allegations. Detective Rosen told
Luna that he wanted Luna to tell the truth and that he thought Luna was
lying. Luna then admitted the allegations.

 Luna preceded to give a taped statement to Rosen, during which police
told him once again that he was not under arrest, that he could leave at
any time, and that he did not have to answer any questions. Luna again
confessed to E.G.’s allegations. The whole transaction lasted about an
hour, after which Luna was allowed to leave the police station.

 Luna was arrested the next day on July 27. The State charged him
with two counts of child molesting, one as a class A Felony, the other as a
class C felony. The trial court denied Luna’s pre-trial motion to suppress
his recorded confession. Luna was found guilty on both counts, but only
sentenced on the class A felony for thirty years. A divided Court of
Appeals reversed his conviction. Luna v. State, No. 79A02-0201-CR-33, slip
op. at 2 (Ind. Ct. App. September 17, 2002) (unpublished table decision).
The majority held that Luna was “in custody and should have been advised of
his Miranda rights.” Id. at 6. Judge Barnes dissented; he noted that Luna
had been allowed to leave and observed, “I believe the proof is in the
pudding here.” Id. at 8. We granted transfer.

 Miranda Rights and Custody

 In Miranda v. Arizona, 384 U.S. 436, 444 (1966), the U.S. Supreme
Court held that when law enforcement officers question a person who has
been “taken into custody or otherwise deprived of his freedom of action in
any significant way,” the person must first “be warned that he has a right
to remain silent, that any statement he does make may be used as evidence
against him, and that he has a right to the presence of an attorney, either
retained or appointed.” See also Stansbury v. California, 511 U.S. 318,
322 (1994).

 When determining whether a person was in custody or deprived of his
freedom, “the ultimate inquiry is simply whether there is a ‘formal arrest
or restraint on freedom of movement’ of the degree associated with a formal
arrest.” California v. Beheler, 463 U.S. 1121, 1125 (1983); see also
Stansbury, 511 U.S. at 322. We have held this is determined by examining
whether a reasonable person in similar circumstances would believe he is
not free to leave. Cliver v. State, 666 N.E.2d 59, 66 (Ind. 1996). As the
U.S. Supreme Court said in deciding whether persons questioned on a bus
were in custody, “Only when the officer, by means of physical force or show
of authority, has in some way restrained the liberty of a citizen may we
conclude that a ‘seizure’ has occurred.” Florida v. Bostick, 501 U.S. 429,
433-34 (1991) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)).

 Applying this objective test to the facts of this case, we conclude
that a reasonable person in Luna’s circumstances would not have believed
himself “under arrest or not free to resist the entreaties of the police.”
 Torres v. State, 673 N.E.2d 472 (Ind. 1996). Miranda warnings were thus
not required. Luna was repeatedly told that he was not under arrest, that
he was free to leave, and that he did not have to talk to the police
officers. In fact, Luna drove to the police station himself, and after
confessing to the crime, was allowed to leave the station on his own.

 The Court of Appeals’ relied on certain facts in holding that Luna was
under arrest: Detective Rosen’s request that Luna drive to the police
station, the security of the office in the police station, Luna’s initial
denial, and Detective Rosen’s insistence on Luna telling the truth and
implying that Luna was lying. The question presented in this case,
however, is not whether there was a coercive environment.

 The decision in Oregon v. Mathiason, 429 U.S. 492 (1977), involves
very similar facts and makes the point rather plainly. Mathiason
voluntarily came to the police station, where he was informed that he was
not under arrest. The police interrogated him rather aggressively, he
confessed, and he left the police station after the interview. The Court
held that Mathiason was not in custody “or otherwise deprived of his
freedom of action in any significant way.” Id. at 495.
 Such a noncustodial situation is not converted to one in which Miranda
 applies simply because a reviewing court concludes that . . . the
 questioning took place in a ‘coercive environment.’ Any interview of
 one suspected of a crime by a police officer will have coercive
 aspects to it, simply by virtue of the fact that the police officer is
 part of a law enforcement system which may ultimately cause the
 suspect to be charged with a crime. But police officers are not
 required to administer Miranda warnings to everyone whom they
 question. Nor is the requirement of warnings to be imposed simply
 because the questioning takes place in the station house, or because
 the questioned person is one whom the police suspect.

Mathiason, 429 U.S. at 495. We conclude that Mathiason governs: a person
who goes voluntarily for a police interview, receives assurances that he is
not under arrest, and leaves after the interview is complete has not been
taken into “custody” by virtue of an energetic interrogation so as to
necessitate Miranda warnings.

 The Court of Appeals relied in part on this Court’s decision in
Dickerson v. State, 257 Ind. 562, 276 N.E.2d 845 (1972). In Dickerson, the
defendant was present at the police station when an officer asked to talk
to him and advised him that he was not under arrest. The defendant
consented to an interrogation, which took place at the police station.
Holding that Miranda warnings were required under such circumstances,
Justice Hunter wrote:
 We believe that an interrogation, initiated by the police and
 conducted in the compelling atmosphere of the interrogation room at
 the police station, at a time when the investigation had focused on
 the accused, constitutes circumstances which would indicate a
 significant deprivation of freedom so as to require the interrogating
 officers to advise the suspect of his constitutional rights.

Dickerson, 276 N.E.2d at 848. It is apparent that Dickerson’s focus on who
initiated the interview and the coercive nature of an interrogation are in
direct conflict with Mathiason, and to that extent Dickerson is overruled.

 Conclusion

 We affirm the trial court’s judgment.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.