**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Clark County Chief Public Defender
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LOUIS MOREIRA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 10A01-1208-CR-351 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Vicki L. Carmichael, Judge
Cause No. 10C04-1109-FB-142

**May 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Louis Moreira appeals his two convictions for burglary, each as a Class B felony, following a jury trial. Moreira raises a single issue for our review, namely, whether the trial court abused its discretion when it admitted into evidence statements Moreira made to police during a custodial interrogation. We affirm.

**FACTS AND PROCEDURAL HISTORY**

On September 2, 2011, officers of the Clark County Sheriff's Department arrested Moreira in connection with recent burglaries at the homes of Lawrence Lyons and Allyson Dean. When officers arrested Moreira, they found him in possession of items belonging to Lyons and Jim and Myra Titus, who owned Dean's residence.

Detective Chris Proctor twice interrogated Moreira at the Clark County police department. Detective Proctor began the first interview by reading Moreira his <u>Miranda</u> rights. Detective Proctor then handed Moreira a form labeled, "Advice of Rights— Interrogation." State's Exh. 34. That form stated, in relevant part, as follows:

YOUR RIGHTS

> Before we ask you any questions, you must understand your rights.
> You have the right to remain silent.
> Anything you say can be used against you in court.
> You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning if you wish.
> If you cannot afford a lawyer, one will be appointed for you before questioning if you wish.
> <u>If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time[.] You also have the right to stop answering at any time until you talk to a lawyer.</u>

* * *

WAIVER OF RIGHTS

> I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Id. (emphasis added).

When Detective Proctor handed the form to Moreira, the detective asked, "Do you understand what I just said?" State's Exh. 38 at 12:08:00.[1] When Moreira did not promptly reply, the detective said: "This ain't giving up your rights. It just says that I explained it to you." Id. at 12:08:07 to :10. Moreira then studied the form silently for fourteen seconds and then briefly shook his head. He then read aloud the "Waiver of Rights" language on the form. Detective Proctor followed that by repeating: "You can stop talking to me at any time." Id. at 12:08:42 to :43. Moreira then signed the advice-of-rights form. During the ensuing interrogation, which lasted a total of fifteen minutes, Moreira made incriminating statements about his involvement in the burglary of Lyons' home.

About three hours later, Detective Proctor began a second interrogation of Moreira. The detective reread Moreira his Miranda rights at the beginning of the interrogation. Over the course of the next thirty-one minutes, Moreira made incriminating statements regarding the burglaries at both Dean's residence and Lyons' home.

---

[1] The contents of the recorded interrogations are not reflected in the transcript of the trial although they were played in open court for the jury.

3

The State charged Moreira with two counts of burglary, each as a Class B felony. Over Moreira's objection, the trial court admitted into evidence his two interrogations with Detective Proctor. The jury found Moreira guilty as charged, and the trial court entered its judgment of conviction and sentence accordingly. This appeal ensued.

## DISCUSSION AND DECISION

Moreira contends that he did not voluntarily and intelligently waive his <u>Miranda</u> rights and, as such, the trial court abused its discretion when it admitted into evidence his recorded confessions. As our supreme court has explained:

> Several standards govern our review. First, the State bears the burden of proving beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights, and that the defendant's confession was voluntarily given. Second, where that standard has been met, [t]he decision whether to admit a confession is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion. And third, when reviewing a challenge to the trial court's decision to admit a confession, we do not reweigh the evidence but instead examine the record for substantial probative evidence of voluntariness.

<u>Ringo v. State</u>, 736 N.E.2d 1209, 1211 (Ind. 2000) (alteration original; citations omitted).

Further:

> A waiver of one's <u>Miranda</u> rights occurs when the defendant, after being advised of those rights and acknowledging that he understands them, proceeds to make a statement without taking advantage of those rights. The admissibility of a confession is controlled by determining from the totality of the circumstances whether the confession was made voluntarily and was not induced by violence, threats, or other improper influences that overcame the defendant's free will. The same test determines whether <u>Miranda</u> rights were voluntarily waived. Thus, the voluntariness of a defendant's waiver of rights is judged by the totality of the circumstances. A signed waiver form is one item of evidence showing the accused was aware of and understood his rights. When challenged, the State may need to show additional evidence tending to prove that Defendant's waiver and decision to speak were voluntary.

4

Id. at 1211-12 (citations omitted).

In evaluating a claim that a statement was not given voluntarily, the trial court is to consider the totality of the circumstances, including: "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health." Pruitt v. State, 834 N.E.2d 90, 115 (Ind. 2005) (quotation omitted). On appeal, we do not reweigh the evidence but instead "examine the record for substantial, probative evidence of voluntariness." Id. (quotation omitted). We examine the evidence most favorable to the State, together with the reasonable inferences that can be drawn therefrom. Id. If there is substantial evidence to support the trial court's conclusion, it will not be set aside. Id.

Again, Moreira asserts that his purported waiver of his Miranda rights was not made voluntarily and intelligently.[2] In particular, Moreira complains that, "[i]mmediately after the detective's hurried oral advisements[,] he asked Moreira to sign the waiver, telling him he was just acknowledging he understood what the detective had said." Appellant's Br. at 12. Moreira continues:

> at no point did the detective make any effort to ascertain whether Moreira understood the Miranda warnings and indeed misled him by suggesting that signing the waiver form did not mean he was giving up any of his rights, but [Moreira] was simply agreeing that the officer had explained those rights.

Id.

---

[2] Throughout his brief, Moreira conflates language regarding whether his confession was voluntary with language regarding whether his waiver of his rights was voluntary. These are two separate questions. Nonetheless, it is clear from the substance of Moreira's argument that he is challenging the legitimacy of his purported waiver of his rights and not his subsequent confession. We restrict our review accordingly. See Ind. Appellate Rule 46(A)(8)(a).

5

In support of his position, Moreira states that "[t]he facts of this case are alarmingly similar to the facts in Dickerson v. State," 257 Ind. 562, 276 N.E.2d 845 (1972), overruled on other grounds as acknowledged in Luna v. State, 788 N.E.2d 832, 834-35 (Ind. 2003) (discussing Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). Appellant's Br. at 11. In Dickerson, the interrogating officer handed the defendant a written rights form, without explanation or comment, which the defendant then signed before he made incriminating statements. Our supreme court held that the State did not demonstrate that the defendant had knowingly and intelligently waived his constitutional rights. Id. at 849. In particular, the court noted that "[a] signed waiver is not conclusive" and the interrogating officer should have orally informed the defendant, who might not have been able to read, "that he would be signing a waiver of his rights and that he should sign it only if he desired to answer questions at that time without the presence or advice of an attorney." Id. at 849-50.

Dickerson is factually distinguishable. Here, unlike in Dickerson, Detective Proctor orally reviewed Moreira's rights before handing Moreira the written advice-of-rights form. Detective Proctor asked Moreira if Moreira understood what Detective Proctor had just said. Moreira then read the written form out loud, demonstrating that he was capable of reading the form and understanding it. The concerns that were present in Dickerson are not present here.

However, when Moreira did not immediately respond to Detective Proctor, Detective Proctor told Moreira that signing the form was not "giving up your rights." State's Exh. 38 at 12:08:07 to :10. The prosecutor described Detective Proctor's

6

statement as "[not] technically incorrect," transcript at 8, because Moreira could re-invoke his <u>Miranda</u> rights at any time after signing the form. <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436, 473-74 (1966) ("Once warnings have been given . . . [i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."). But Detective Proctor's comment was a misleading half-truth. To waive means to give up, to surrender. Moreira did in fact "giv[e] up [his] rights" when he executed the written form and decided to speak. While we do not attribute an intent to deceive to Detective Proctor, that Moreira could later re-invoke his rights is not equivalent to saying that he would not be waiving those rights when he executed the form.

Nonetheless, Moreira is not a stranger to the justice system, and it is well established that, in reviewing the totality of the circumstances surrounding a defendant's purported waiver of his <u>Miranda</u> rights, the defendant's "extensive criminal record" is entitled to "[s]ome weight." <u>Allen v. State</u>, 686 N.E.2d 760, 773 & n.10 (Ind. 1997). Since July of 2003, Moreira has been charged with numerous crimes in three states. In particular, between July of 2003 and the instant offenses, Moreira had been charged with the following Indiana offenses: operating while intoxicated, as a Class A misdemeanor; possession of marijuana in an amount exceeding thirty grams, as a Class D felony; possession of paraphernalia, as a Class A misdemeanor; and burglary, as a Class B felony. He has also been charged in other states with the following offenses: possession of a firearm, trespass, trafficking in cocaine (on two different occasions), possession of

7

paraphernalia, possession of marijuana (on two different occasions), and receiving stolen property.

Accordingly, based on Moreira's extensive criminal history, to the extent Detective Proctor's oral statements could have been misleading to an unsophisticated defendant we cannot say that they were misleading to Moreira. Further, after Detective Proctor's misleading comment, Moreira re-read the written waiver form, which clearly stated: "If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time[.] You also have the right to stop answering at any time until you talk to a lawyer." State's Exh. at 34.

In light of our standard of review and the totality of the circumstances, we cannot say that the trial court abused its discretion when it concluded that Moreira voluntarily and intelligently waived his Miranda rights and, subsequently, admitted Moreira's recorded statements into evidence. Accordingly, we affirm Moreira's convictions.

Affirmed.

ROBB, C.J., and MAY, J., concur.

8