Tiverio Serrano LUNA, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 79S02–0212–CR–638.

Supreme Court of Indiana.

May 14, 2003.

Michael B. Troemel, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Zachary Stock, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Tiverio Luna drove himself to the police station because the police asked to interview him about possible involvement in a child molestation. Detectives interrogated him for about an hour, and Luna confessed. He then drove himself home.

The Court of Appeals held that Luna had been under arrest when he confessed, and reversed his conviction because he had not been read his *Miranda* rights. We conclude Luna was not under arrest and affirm his conviction.

### Facts and Procedural History

On July 24, 2000, ten-year-old E.G. spent the night at her friend Arianna Luna's home in Lafayette. The next day, E.G. accused Arianna's father, Tiverio Luna, of using his hands and mouth on her privates during the early morning hours after he had returned home from work. The incident was reported to the Lafayette

Police Department and Child Protective Services that same day, July 25.

The following day, July 26, Detective Jay Rosen of the Lafayette Police Department found Luna at work and asked him to come to the police station for about an hour to tell his side of the story. Luna agreed and, after some discussion, decided to drive himself to the police station. Rosen told Luna both at the restaurant and at the station that he did not have to talk to the police, that he was not under arrest, and that he was free to leave at any time.

At the station, Detective Rosen and Detective Tom Davidson interviewed Luna in their office, which required a punch code to enter but not to leave. Rosen and Davidson sat behind the desk in the office and Luna sat on the opposite side, which was closest to the closed office door. The initial conversation, which was unrecorded, lasted about thirty-five minutes. Luna initially denied E.G.'s allegations. Detective Rosen told Luna that he wanted Luna to tell the truth and that he thought Luna was lying. Luna then admitted the allegations.

Luna preceded to give a taped statement to Rosen, during which police told him once again that he was not under arrest, that he could leave at any time, and that he did not have to answer any questions. Luna again confessed to E.G.'s allegations. The whole transaction lasted about an hour, after which Luna was allowed to leave the police station.

Luna was arrested the next day on July 27. The State charged him with two counts of child molesting, one as a class A Felony, the other as a class C felony. The trial court denied Luna's pre-trial motion to suppress his recorded confession. Luna was found guilty on both counts, but only sentenced on the class A felony for thirty years. A divided Court of Appeals reversed his conviction. *Luna v. State*, No. 79A02–0201–CR–33, slip op. at 2, 775 N.E.2d 404 (Ind.Ct.App. September 17, 2002) (unpublished table decision). The majority held that Luna was "in custody and should have been advised of his *Miranda* rights." *Id.* at 6. Judge Barnes dissented; he noted that Luna had been allowed to leave and observed, "I believe the proof is in the pudding here." *Id.* at 8. We granted transfer.

### Miranda Rights and Custody

In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the U.S. Supreme Court held that when law enforcement officers question a person who has been "taken into custody or otherwise deprived of his freedom of action in any significant way," the person must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *See also Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

When determining whether a person was in custody or deprived of his freedom, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *see also Stansbury*, 511 U.S. at 322, 114 S.Ct. 1526. We have held this is determined by examining whether a reasonable person in similar circumstances would believe he is not free to leave. *Cliver v. State*, 666 N.E.2d 59, 66 (Ind.1996). As the U.S. Supreme Court said in deciding whether persons questioned on a bus were in custody, "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citi-

zen may we conclude that a 'seizure' has occurred." *Florida v. Bostick,* 501 U.S. 429, 433–34, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

■ Applying this objective test to the facts of this case, we conclude that a reasonable person in Luna's circumstances would not have believed himself "under arrest or not free to resist the entreaties of the police." *Torres v. State,* 673 N.E.2d 472 (Ind.1996). *Miranda* warnings were thus not required. Luna was repeatedly told that he was not under arrest, that he was free to leave, and that he did not have to talk to the police officers. In fact, Luna drove to the police station himself, and after confessing to the crime, was allowed to leave the station on his own.

The Court of Appeals' relied on certain facts in holding that Luna was under arrest: Detective Rosen's request that Luna drive to the police station, the security of the office in the police station, Luna's initial denial, and Detective Rosen's insistence on Luna telling the truth and implying that Luna was lying. The question presented in this case, however, is not whether there was a coercive environment.

■ The decision in *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), involves very similar facts and makes the point rather plainly. Mathiason voluntarily came to the police station, where he was informed that he was not under arrest. The police interrogated him rather aggressively, he confessed, and he left the police station after the interview. The Court held that Mathiason was not in custody "or otherwise deprived of his freedom of action in any significant way." *Id.* at 495, 97 S.Ct. 711.

Such a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that ... the questioning took place in a 'coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.

*Mathiason,* 429 U.S. at 495, 97 S.Ct. 711. We conclude that *Mathiason* governs: a person who goes voluntarily for a police interview, receives assurances that he is not under arrest, and leaves after the interview is complete has not been taken into "custody" by virtue of an energetic interrogation so as to necessitate *Miranda* warnings.

The Court of Appeals relied in part on this Court's decision in *Dickerson v. State,* 257 Ind. 562, 276 N.E.2d 845 (1972). In *Dickerson,* the defendant was present at the police station when an officer asked to talk to him and advised him that he was not under arrest. The defendant consented to an interrogation, which took place at the police station. Holding that *Miranda* warnings were required under such circumstances, Justice Hunter wrote:

> We believe that an interrogation, initiated by the police and conducted in the compelling atmosphere of the interrogation room at the police station, at a time when the investigation had focused on the accused, constitutes circumstances which would indicate a significant deprivation of freedom so as to require the

interrogating officers to advise the suspect of his constitutional rights.

*Dickerson,* 276 N.E.2d at 848.  It is apparent that *Dickerson's* focus on who initiated the interview and the coercive nature of an interrogation are in direct conflict with *Mathiason,* and to that extent *Dickerson* is overruled.

### Conclusion

We affirm the trial court's judgment.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.