**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ANTHONY C. LAWRENCE**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana



FILED

Jun 20 2012, 8:53 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RONNIE D. INABNITT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  33A01-1110-CR-517 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENRY SUPERIOR COURT
The Honorable E. Edward Dunsmore, Judge
Cause No. 33D01-1005-FA-6

June 20, 2012

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Ronnie D. Inabnitt appeals his two convictions of class A felony Child Molesting[1] and the seventy-year sentence imposed thereon. Specifically, Inabnitt argues that the trial court abused its discretion in admitting his police statement into evidence. Inabnitt also argues that the trial court erred in sentencing him because it relied on improper aggravating circumstances in imposing consecutive sentences and that his sentence was inappropriate given the nature of the offenses, and his character. Inabnitt requests that we find that the trial court erred in admitting the statement and remand the case for a new trial that excludes this evidence or, in the alternative, that we revise his sentence to an aggregate term of thirty-five years.

Concluding that the trial court did not err in admitting the police statement into evidence but that Inabnitt's sentence is inappropriate, we affirm in part the trial court's judgment and revise Inabnitt's sentence to thirty-five years.

## FACTS

Inabnitt and Crystal Reece were married in August 1995. Their daughter, K.I., was born in October 1998. In the summer of 2009, when K.I. was ten years old, Reece was in the hospital for a week because of a serious infection. Thirty-six-year-old Inabnitt was at home with K.I. One night while Inabnitt was watching pornography on a computer, K.I. walked into the room. Inabnitt asked her to touch his penis. Inabnitt then placed his penis in K.I.'s mouth and subsequently had sexual intercourse with her.

---

[1] Ind. Code § 35-42-4-3.

K.I. wrote a note to her mother explaining what her father had done to her and placed it in her jewelry box for Reece to discover. K.I. knew that her mother would find the note because Reece frequently borrowed jewelry from K.I. Reece found the note approximately one month after she was released from the hospital. When Reece asked K.I. if what she had written was true, K.I. confirmed that it was. Reece then confronted Inabnitt, who admitted what he had done.

Reece did not immediately contact the police department or leave Inabnitt because she was scared that K.I. might be taken away from her. Reece eventually left Inabnitt in March or April 2010. Also at that time, Reece told her brother-in-law what had happened to K.I. and asked him to talk to her mother, Patricia Baesman, about it. When Baesman learned what had happened, she immediately contacted child protective services and took K.I. to the Newcastle Police Department. K.I. spoke with Detective Andrew Hood, who was assigned to her case. Detective Hood also spoke with Reece.

On May 9, 2010, Detective Hood dispatched two officers to Inabnitt's residence on a "welfare check" call. Tr. p. 458. The officers asked Inabnitt if he would be willing to come to the station to speak with a detective, and Inabnitt responded that he had no problem speaking to one of the detectives. One of the officers transported Inabnitt back to the police station. Inabnitt was not under arrest and he was not handcuffed. The officer drove Inabnitt in a marked police car, but the car did not have back seat locks or a glass screen between the front and back seats.

3

When they arrived at the station, the officer introduced Inabnitt to Detective Hood. The detective retrieved some work supplies from his office and walked back to an interview room with Inabnitt. The detective did not lock the door to the interview room, and Inabnitt was free to leave whenever he wished. Detective Hood asked Inabnitt if he wanted to speak to him. Inabnitt initially responded, "I don't know – No." State's Exhibit 4. Inabnitt subsequently agreed to talk to the detective. Detective Hood then read Inabnitt his Miranda rights, and Inabnitt signed a waiver of rights form indicating that he understood those rights and was willing to make a statement. The detective also told Inabnitt that the interview was being recorded.

Inabnitt initially denied touching K.I. He later asked what was going to happen to him that day. Detective Hood explained that Inabnitt would be able to return home. The detective further explained that if a warrant was issued, the detective would contact Inabnitt and give him enough time to get the money together so that he could bond out of jail. Inabnitt eventually admitted that he had had sexual intercourse with his daughter. At the conclusion of the interview, a police officer gave Inabnitt a ride home.

The State subsequently charged Inabnitt with two counts of class A felony child molesting, two counts of class B felony incest, and one count of class C felony child molesting. While Inabnitt was in jail awaiting trial, he wrote Reece a letter stating that if she and K.I. would help him get out of jail, he would make sure the family had its own home in one year. He also promised to pay all of the utilities and make sure that Reece always had a car to drive. Inabnitt further promised to take on two or three jobs to make

4

sure everyone's dreams came true. Inabnitt explained that if K.I. would help him, he would owe her his life. He asked K.I. to write a letter explaining that she made up the molestation allegations. Reece was to pretend she found the letter in K.I.'s sock drawer, and send it to Inabnitt's lawyer and the trial court judge. Inabnitt further explained that the judge or prosecutor would want to meet with K.I. to be sure she wrote the letter. Although the judge or prosecutor might intimidate K.I., Inabnitt explained that there was nothing either one of them could do to K.I. for changing her story. According to Inabnitt, the whole case was based on K.I.'s statement, and if she changed her story, the case was over. He also told Reece to tell K.I. that if he was convicted of the charges, Reece might be charged with neglect. Lastly, Inabnitt enclosed a sample letter of the one he asked K.I. to write.

Before trial, Inabnitt moved to suppress his statement to Detective Hood. Inabnitt contended that the interview was a custodial interrogation and that he invoked his right to remain silent at the beginning of the interview. The trial court denied the motion, and Inabnitt's statement was admitted into evidence at trial. Also, at trial, K.I. testified that Inabnitt asked her to massage and suck his penis. Inabnitt's penis was soft when K.I. began. However, after K.I. put her hands and mouth on Inabnitt's penis, it became harder and bigger. Inabnitt then placed his penis in K.I.'s vagina and moved it around inside her. K.I. further explained that white fluid with a smell came out of Inabnitt's penis. Reece testified that Inabnitt admitted to her that he had had sexual intercourse with K.I. Reece further testified that K.I. had been in counseling for over a year. She also sleeps

5

with a light on, locks the bedroom door, and will not let anyone in her room. She is very emotional and carries around a "huge amount of rage and anger." Tr. p. 749. Her fear is that people at school will find out what happened. Family members do not mention Inabnitt's name when they are at home. The letter that Inabnitt sent Reece from jail was also admitted into evidence.

A jury convicted Inabnitt of all five counts. The trial court vacated the incest and class C felony child molesting convictions on double jeopardy grounds. In sentencing Inabnitt on the remaining two class A felony convictions, the trial court found the following nine aggravating circumstances: 1) Inabnitt's criminal history, which included one felony conviction, a class A misdemeanor conviction for domestic battery, and other misdemeanor convictions; 2) the victim was ten years old; 3) the harm suffered by the victim was significant and greater than the elements necessary to prove the offense as evidenced by the victim's emotional and personal harm that has required professional counseling and would continue to require professional counseling to acquire skills to recover and experience emotional and mental healing on a personal basis; 4) Inabnitt, as K.I.'s biological father, violated a position of trust with the victim; 5) the offenses occurred while K.I.'s mother was hospitalized, leaving aid for the victim unavailable; 6) Inabnitt attempted to persuade Reece and the victim to recant their pre-trial statements and provided them with hand-written templates from jail to assist the family in accomplishing this goal; 7) there are no grounds excusing or justifying the crimes; 8) Inabnitt's character and attitude indicate he is likely to offend again; and 9) although

6

imprisonment would result in a hardship to Inabnitt's dependents, not imprisoning Inabnitt would result in a greater hardship.

In addition, the trial court found the following mitigating factors: 1) Inabnitt cooperated by giving a statement to police admitting the crimes; 2) Inabnitt had undocumented substance abuse problems; and 3) Inabnitt had a troubled childhood. After reviewing the aggravating and mitigating factors, the trial court sentenced Inabnitt to thirty-five years for each of the two convictions for class A child molesting. The court further ordered the sentences to run consecutively, for an aggregate sentence of seventy years. Inabnitt appeals his conviction and sentence.

## DISCUSSION AND DECISION

### I. Police Statement

Inabnitt first argues that the trial court erred in admitting his police statement into evidence. Specifically, he contends that when Detective Hood asked Inabnitt if he wanted to speak to the detective, Inabnitt's initial response, "I don't know – No," constituted an invocation of his right to remain silent during custodial interrogation requiring further questioning to cease pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). The State responds that Inabnitt was not in custody at the time he responded to the detective's question and therefore Miranda does not apply.

At the outset, we note that although Inabnitt filed a motion to suppress the challenged evidence, he proceeded to trial after the motion was denied. Thus, the sole claim now is whether the trial court abused its discretion in admitting the statement into

evidence. See Chiszar v. State, 936 N.E.2d 816, 824 (Ind. Ct. App. 2010), trans. denied. An abuse of discretion occurs if a decision is clearly against the logic and effect of the facts and circumstances before the court. Id.

The requirements of Miranda do not apply beyond coercive custodial interrogation. Zook v. State, 513 N.E.2d 1217, 1221 (Ind. 1987). In determining whether a person was in custody, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. Luna v. State, 788 N.E.2d 832, 833 (Ind. 2003). We make this determination by examining whether a reasonable person in similar circumstances would believe he was not free to leave. Id. We examine all the circumstances surrounding an interrogation, and are concerned with objective circumstances, not upon the subjective views of the interrogating officers or the subject being questioned. Id. In order to conclude that the defendant was indeed seized at the time of the statement, we must find that the officer by means of physical force or show of authority, in some way restrained the liberty of a citizen. Id.

Here, Inabnitt expressly and voluntarily agreed to accompany the officers to the police station to speak with a detective. Inabnitt rode unrestrained in the officer's vehicle. Inabnitt waited for the detective to retrieve some work supplies from his office and then walked back to an interview room with him. At no point was Inabnitt searched or handcuffed, and Detective Hood did not lock the door to the interview room. Based on the foregoing, we conclude that a reasonable person in Inabnitt's position would not have

8

believed that his liberty was being restrained or that he was in police custody.  Miranda therefore did not apply, and the trial court did not abuse its discretion in admitting Inabnitt's statement into evidence.[2]

## II.  Sentence

Inabnitt also argues that the trial court erred in sentencing him.  He specifically argues that the trial court relied on improper aggravating factors in imposing consecutive sentences and that his seventy-year sentence is in appropriate in light of the nature of the offense, and his character.  We address each of his contentions in turn.

Sentencing decisions rest within the sound discretion of the trial court.  Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218.  With the exception of our authority to review sentences under Indiana Appellate Rule 7(B), as long as a defendant's sentence is within the statutory range, we review it only for an abuse of discretion.  Id.  Circumstances under which a trial court may be found to have abused its discretion include: 1) failing to enter a sentencing statement, 2) entering a sentencing statement that includes reasons not supported by the record, 3) entering a sentencing statement that omits reasons clearly supported by the record, or 4) entering a sentencing statement that includes reasons that are improper as a matter of law.  Id. at 490-91.  Although the reasons or omission of reasons given for choosing a sentence are

---

[2] As an aside, even if the trial court had erred, any such error would have been harmless.  Error in the admission of evidence is harmless if the improperly admitted evidence is merely cumulative of other properly admitted evidence.  Martin v. State, 736 N.E.2d 1213, 1219 (Ind. 2000).  Here, K.I. testified that her father placed his penis in her mouth and vagina.  Reece testified that Inabnitt admitted to her what he had done to K.I., and we agree with the State that Inabnitt's jailhouse letter provided further evidence of his guilt.  Inabnitt's statement is merely cumulative of this evidence.

reviewable on appeal for an abuse of discretion, the weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. Id. at 491. We also note that a single aggravating factor may be sufficient to sustain an enhanced sentence, including consecutive sentences. Owens v. State, 916 N.E.2d 913, 917 (Ind. Ct. App. 2009).

As a preliminary matter, we note that Inabnitt's challenges to the weight assigned to the aggravating factors are not viable arguments on appeal. See Anglemyer, 868 N.E.2d at 491. Inabnitt also challenges the validity of several of the aggravating factors. For example, he first contends that the victim's age was not of tender years and should not have been considered an aggravating factor.

In some instances, the "tender age" of a victim in a child molesting case may be considered an aggravating factor as a particularized circumstance of the crime. Edrington v. State, 909 N.E.2d 1093, 1097 (Ind. Ct. App. 2009). For example, in Hamilton v. State, 955 N.E.2d 723, 726 (Ind. 2011), where the victim was nine years old, our Supreme Court noted that the victim's age suggests a sliding scale in sentencing, as younger ages of victims tend to support harsher sentences. Here, the victim was only ten years old. The trial court did not abuse its discretion in considering the victim's age as an aggravating factor.

Inabnitt also argues that the trial court erred in finding as an aggravating factor that the harm suffered by K.I. was significant and greater than the elements necessary to prove the offense as evidenced by the victim's emotional and personal harm that has

10

required professional counseling and would continue to require professional counseling. Inabnitt is correct that the emotional and psychological effects of a crime are inappropriate aggravating factors unless the impact, harm, or trauma is greater than that usually associated with the crime. See Thompson v. State, 793 N.E.2d 1046, 1053 (Ind. Ct. App. 2003). Here, however, the trial court's sentencing statement and Reece's testimony supports this aggravating factor. Specifically, Reece testified that K.I. has been in counseling for a year. She still sleeps with a light on, locks the door, and does not want anyone coming into her room because she does not feel safe and secure. According to Reece, K.I. still carries a huge amount of anger and rage. She has frequent outbreaks, and is afraid that people at school will find out what happened to her. Based on the foregoing, the evidence supports a finding that the impact, harm, or trauma to K.I. is greater than that usually associated with the crime.

Lastly, Inabnitt argues that the trial court erred in considering as an aggravating factor that Inabnitt's character and attitude indicated that he was likely to offend again. Specifically, according to Inabnitt, "there is little in the record to support the aggravating factor that he is likely to commit another crime." Appellant's Br. p. 25. However, our review of the record reveals that Inabnitt has a prior criminal history. In addition, he encouraged his wife and daughter to perjure themselves so that the charges against him would be dropped. He even enclosed a sample letter of the one he asked K.I. to write recanting her allegations. This evidence clearly supports the trial court's aggravating

11

factor that Inabnitt's character and attitude indicated that he was likely to offend again. The trial court did not err in considering this aggravating factor.

Inabnitt also contends that his sentence is inappropriate in light of the nature of the offenses, and his character. Indiana Appellate Rule7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The defendant bears the burden of persuading us that the sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

The Indiana Supreme Court has repeatedly revised a defendant's aggregate sentence stemming from multiple episodes of child molesting of a single victim and ordered the sentences on each count to run concurrently. For example, in Monroe v. State, 886 N.E.2d 578 (Ind. 2008), Monroe was convicted of five counts of class A felony child molesting. The trial court sentenced him to twenty-two years on each count with two years suspended to probation and ordered the sentences to be served consecutively for an aggregate sentence of 100 years. In considering the nature of the offense on appeal, the Indiana Supreme Court noted that Monroe was in a position of trust with his victim and molested the child repeatedly for over two years. Id. at 580. However, the Court also observed that the five counts were identical and involved the same child. Id. Regarding Monroe's character, the Court noted that although he had a prior criminal history, all of his convictions were driving related, so his criminal history did not justify the imposition of consecutive sentences. Id. Based on these facts and circumstances, the

12

Supreme Court concluded that the nature of the offenses and Monroe's character warranted enhanced, but not consecutive, sentences.    Id. at 581.  The Supreme Court revised Monroe's sentence to a maximum fifty-year term for each of the five counts, but ordered that they be served concurrently. Id.

Similarly, in Harris v. State, 897 N.E.2d 927 (Ind. 2008), Harris was convicted of two counts of class A felony child molesting and sentenced to consecutive fifty-year terms.  On appeal, the Indiana Supreme Court noted that Harris had occupied a position of trust with the eleven-year-old victim and had committed multiple uncharged acts of sexual misconduct that occurred over a period of time.  However, as in Monroe, the Court observed that the two counts of child molesting were identical and involved sexual intercourse with the same child.  Although Harris had a prior criminal record, the Supreme Court emphasized that he had no prior sex offenses in his record and concluded that his criminal history was not a significant aggravator.  Id. at 930.  Based on the facts and circumstances of the case, the Supreme Court held that consecutive sentences were not warranted and revised Harris' sentence to two concurrent fifty-year terms.  Id.

In Rivers v. State, 915 N.E.2d 141 (Ind. 2009), Rivers was convicted of two counts of class A felony child molesting for molesting his seven- or eight-year-old niece on two occasions.  The trial court sentenced him to consecutive thirty-year terms.  In examining his character on appeal, the Indiana Supreme Court noted that Rivers had no criminal history, maintained steady employment, and served as a father figure to the victim for a number of years before committing his crimes.  Id. at 143.  Regarding the

13

nature of the offenses, the Court observed that Rivers twice molested the victim in a relatively short period of time and there was no other sexual misconduct on Rivers's part. Id. at 144. Based on these facts and circumstances, the Supreme Court concluded that Rivers's thirty-year sentences should run concurrently rather than consecutively. Id.

More recently, in Pierce v. State, 949 N.E.2d 349 (Ind. 2011), Pierce was convicted of three counts of class A felony child molesting and one count of class C felony child molesting. The trial court sentenced Pierce to forty years for each of the class A felony convictions and four years for the class C felony conviction and ordered the sentences to run consecutively for a total aggregate sentence of 124 years. When reviewing the nature of the nature of the offenses on appeal, our Supreme Court again noted that three counts of class A felony child molesting were identical and involved the same victim. Id. at 352. Regarding Pierce's character, the Supreme Court noted that Pierce's prior class C felony child molesting conviction occurred eight years before the instant offenses. Id. Based upon these facts and circumstances, the Supreme Court concluded that four consecutive sentences were not justified and revised Pierce's sentence to eighty years. Id. at 353.

Here, Inabnitt was convicted of two counts of class A felony child molesting and was sentenced to thirty-five years for each conviction to be served consecutively, for an aggregate sentence of seventy years. His two convictions stem from a single occurrence of molestation in which Inabnitt initially placed his penis in his ten-year-old daughter's mouth and subsequently had sexual intercourse with her. These acts are heinous.

However, based on the similarities in the facts of this case and the facts of the cases discussed above that were decided by our Supreme Court, we are constrained to find that Inabnitt's sentence is inappropriate in light of the nature of the offenses and the character of the offender and to order the sentences to run concurrently. Accordingly, we order Inabnitt to serve an aggregate sentence of thirty-five years in the Department of Correction. See Laster v. State, 918 N.E.2d 428, 434-35 (Ind. Ct. App. 2009) (revising consecutive advisory sentences to concurrent enhanced sentences where the defendant committed multiple acts of molestation against one child).

We affirm in part the judgment of the trial court and revise Inabnitt's sentence to thirty-five years.

KIRSCH, J., and BROWN, J., concur.