

# IN THE
# Court of Appeals of Indiana

Antonio Ferguson,

*Appellant-Defendant*



FILED

Jun 17 2026, 9:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

State of Indiana,

*Appellee-Plaintiff*

---

June 17, 2026

Court of Appeals Case No.
25A-CR-608

Appeal from the Wayne Superior Court No. 1

The Honorable Ronald J. Moore, Judge

Trial Court Cause No.
89D01-2306-F2-15

---

**Opinion by Judge May**
Judge Weissmann and Judge DeBoer concur.

**May, Judge.**

[1] Antonio Ferguson appeals following his conviction of Level 2 felony dealing in methamphetamine.[1]  Ferguson argues the trial court abused its discretion by admitting into evidence the methamphetamine seized from him during a traffic stop because the search violated both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.  On cross-appeal, the State argues any error was waived because Ferguson did not object when the State first offered evidence of the methamphetamine found on Ferguson.  Under the specific facts herein, we decline to hold Ferguson's argument was waived, but we rule for the State on the merits of Ferguson's constitutional arguments.  Accordingly, we affirm Ferguson's conviction.[2]

## Facts and Procedural History

[2] On May 30, 2023,[3] Officer Amanda Thackrey-Toole of the Richmond Police Department was working as a patrol officer on third shift.  She was in full uniform and driving a patrol car with police lights, and Officer Jared Clayton, a new recruit who did not yet have a uniform, was riding with her.  Around 11:28

---

[1] Ind. Code § 35-48-4-1.1(a)(2)(A) & (e)(1).

[2] We held oral argument in this case on March 24, 2026, at Andrean High School in Merrillville, Indiana. We commend counsel on the quality of their advocacy, and we thank the students and staff of Andrean High School for their hospitality.  We are also grateful to the many members of the local bench and bar who attended the event and engaged with students.

[3] As of this date, Richmond Police Department had access to neither body cameras nor dashboard cameras. Accordingly, no video of the traffic stop was available.

p.m., Officer Thackrey-Toole noticed an SUV with a taillight that was not lit. As Officer Thackrey-Toole followed the SUV, it "failed to come to a complete stop at several stop signs." (Tr. Vol. III at 9.) Officer Thackrey-Toole initiated a traffic stop, and the SUV pulled over.

[3] Officer Thackrey-Toole exited her patrol car and approached the SUV. Officer Clayton also exited the patrol car and stood on the sidewalk to the right of her patrol car to observe how Officer Thackrey-Toole conducted the stop. Officer Thackrey-Toole found the SUV had three occupants – the driver was Edward Hollingsworth, the front passenger was Joni Barker, and the rear passenger was Ferguson. Officer Thackrey-Toole informed Hollingsworth of the reason for the stop and requested his license and registration, which he provided. She also collected names and birth dates for the passengers. Officer Thackrey-Toole then returned to her patrol car to run the collected information through police databases.

[4] Officer Thackrey-Toole's database searches did not uncover any outstanding warrants, and Hollingsworth's driver's license and registration were valid. As Officer Thackrey-Toole conducted those searches, Richmond Police Department Officer William Hampton arrived on scene. Officer Thackrey-Toole informed Officer Hampton that, although the checks were clear, she intended to return the documents to Hollingsworth and ask for permission to search the vehicle. Officer Hampton agreed to assist.

Officer Hampton approached Hollingsworth's car on the passenger side while Officer Thackrey-Toole approached on the driver's side. Officer Thackrey-Toole returned the license and registration to Hollingsworth, informed him that she was going to be letting him "go with a verbal warning for the traffic violations[,]" (Tr. Vol. III at 16), and then asked all three occupants if they would consent to search of the car. Specifically, she said, "Just so you know, you don't have to let me search the car, um but I am asking your permission to do so." (*Id*.) The occupants of the car consented to the search, but then Ferguson immediately began to move around, sweat, and show other signs of nervousness to an extent that Officer Thackrey-Toole found it "alarming[.]" (*Id*. at 17.) Because Ferguson was so nervous, Officer Thackrey-Toole and Officer Hampton determined Ferguson should be removed from the car first.

Officer Hampton opened the rear passenger door and asked Ferguson to exit the car. Ferguson "froze up" and looked at Officer Hampton "kind of nervously." (*Id*. at 70.) Officer Hampton then ordered Ferguson to exit the car and keep his hands where Officer Hampton could see them. After Ferguson exited the car, he moved his hands toward his waistline multiple times, and Officer Hampton repeatedly told Ferguson "to keep his hands up." (*Id*. at 74.) Eventually, Officer Hampton moved Ferguson toward the trunk of the car and had him place his hands on the car. Ferguson, however, did not keep his hands on the car. He again dropped his hands from the car toward the waistband of his pants and top of his legs, so Officer Hampton grabbed Ferguson's hands,

placed them on top of the car, and told Ferguson not to move them. Officer Hampton then began a pat-down of Ferguson for weapons.

[7] Ferguson's behavior had "immediately raise[d] concern" for Officer Thackrey-Toole because "the most common place that a weapon is stored or possessed is the waistband." (*Id*. at 19.) Due to these security concerns, Officer Thackrey-Toole began to move from the driver's side of the car to the passenger's side of the car. When Officer Hampton patted the left pocket of Ferguson's mesh basketball shorts, the pocket contained a large "bulge" and made a "crunching sound[.]" (*Id*. at 20.) Officer Hampton could feel that the bag contained "a rock-like substance[,]" (*id*. at 73), and he "believed it to be an illicit substance." (*Id*. at 74.) Officer Thackrey-Toole removed a large plastic bag of "rock[-]like substance presumed to be methamphetamine" from Ferguson's pocket. (*Id*. at 21.) Officer Hampton handcuffed Ferguson and sat him on the curb, while Officer Thackrey-Toole secured the presumed methamphetamine in her patrol car. Officer Thackrey-Toole then removed the other two occupants from the car, searched the car, and released Hollingsworth and Barker from the scene. After being provided warnings in accordance with *Miranda v. Arizona*, 384 U.S. 436 (1966), Ferguson admitted he intended to repackage and sell the drugs.

On June 1, 2023, the State charged Ferguson with Level 2 felony dealing in methamphetamine.[4] Ferguson filed a motion to suppress the methamphetamine found on him, and the trial court heard evidence on that motion on May 1, 2024. After receiving post-hearing briefs from the parties, the trial court denied Ferguson's motion in an eight-page order that included extensive findings and conclusions. Ferguson requested permission to file an interlocutory appeal from the trial court's denial, but the trial court denied permission. Ferguson renewed his motion to suppress three months before trial, and the trial court again denied the motion after hearing additional evidence. Ferguson was tried by a jury, which found Ferguson guilty. Following the presentation of evidence at a sentencing hearing, the trial court imposed a sentence of 17.5 years.

## Discussion and Decision

Ferguson appeals the admission of any evidence demonstrating he possessed methamphetamine. We review a trial court's evidentiary ruling for an abuse of discretion, which "occurs when the ruling is clearly against the logic and effect of the facts and circumstances." *Snow v. State*, 77 N.E.3d 173, 176 (Ind. 2017). As we review the trial court's decision, we consider the totality of circumstances and take "conflicting evidence in the light most favorable to the trial court's

---

[4] The baggie recovered from Ferguson's pocket contained 44.25 grams of methamphetamine, and our statutes define the crime as a Level 2 felony if the amount involved is greater than 10 grams. Ind. Code § 35-48-4-1.1(e)(1).

ruling." *Id.* We provide trial court judges broad discretion to decide the admissibility of evidence because they are much more practiced at determining questions of relevance and the impact of evidence on "the rhythms of a trial." *Id.* at 177 (quoting *U.S. v. Hall*, 858 F.3d 254, 289 (4th Cir. 2017) (Wilkinson, J., dissenting)).

In this case, the trial court also heard evidence at two pre-trial hearings on Ferguson's motion to suppress.

> When ruling on the admission of evidence at trial following denial of a motion to suppress, a trial court must consider the foundational evidence presented at trial. It also considers evidence from the suppression hearing that is favorable to the defendant only to the extent it is uncontradicted at trial.

*Ramsey v. State*, 222 N.E.3d 1038, 1044 (Ind. Ct. App. 2023) (quoting *Gerth v. State*, 51 N.E.3d 368, 372 (Ind. Ct. App. 2016) (internal citations omitted in *Ramsey*)), *trans. denied*. We reverse the trial court for an abuse of discretion only if the error impacts a party's substantial rights. *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013). "However, the ultimate determination of the constitutionality of a search or seizure is a question of law that we review de novo." *Ramsey*, 222 N.E.3d at 1044 (quoting *Gerth*, 51 N.E.3d at 372)).

## 1. Waiver

We deal first with the State's cross-appeal argument that Ferguson "did not always object to the evidence in question." (Br. of Appellee at 9.) As the State notes, challenges to the admissibility of evidence are waived if objections are

not "timely[.]"[5] *Stephenson v. State*, 29 N.E.3d 111, 118 (Ind. 2015). "The requirement that evidentiary objections be made timely is for the purpose of permitting a trial court to take appropriate preventative or corrective action during trial." *Id*. at 119. Thus, we look at the circumstances surrounding the admission of the evidence at issue to determine whether Ferguson's arguments are waived.

[12] Officer Thackrey-Toole was the first witness, and Ferguson did not object when Officer Thackrey-Toole testified that police found a bag of what appeared to be methamphetamine on Ferguson. Nor did Ferguson object when the State offered pictures of the bag of presumptive methamphetamine or when Officer Thackrey-Toole testified that Ferguson admitted his intent to sell part of the drugs. However, when the State asked Officer Thackrey-Toole to identify the "evidence envelope" containing the methamphetamine, which Officer Thackrey-Toole had deposited in the evidence room on the night of Ferguson's arrest, Ferguson's counsel asked to approach the bench and said, "Your Honor. Um, I want to um make uh my objection at this time, pursuant to my Motion to Suppress." (Tr. Vol. III at 27.) The Judge responded:

> Thank you, [counsel]. The Court has ruled previously regarding your Motion to Suppress, and that ruling was made on June 5 of

---

[5] Our Indiana Supreme Court recently adopted a new version of Indiana Evidence Rule 103(b), and beginning July 1, 2026, parties will no longer need to renew an objection at trial to preserve a claim of error on appeal, if the trial court "rule[d] definitively on the record[.]" Order Amending Rules of Evidence, Cause No. 26S-MS-8 (Ind. March 6, 2026). We note the new version of Rule 103(b) does not define what it means for a trial court to rule "definitively[.]" *Id*.

2024, and again on a Renewed [sic] on December 6 of 2024 by the prior regular judge of this court. Upon taking office, and prior to this trial, I have reviewed all of the evidence, including the transcript and hearing of that audio recording of that hearing, as well as the applicable law, and this Judge will not change the ruling or overrule the prior judge's ruling, and therefore your Motion to Suppress is denied. You are not required to make an ongoing objection. Your objection is noted and we can proceed without – however you choose. But without a requirement for there to be an ongoing objection throughout this trial, [counsel], do you understand my ruling?

(*Id*. at 27-28.) After counsel for both parties confirmed their understanding, the Judge said: "Thank you. The record is preserved for appeal, as I have previously noted." (*Id*. at 28.)

[13] We agree with the State that Ferguson's objection would have been better timed if it had occurred prior to Officer Thackrey-Toole testifying about police removing a bag of "presumptive methamphetamine" from Ferguson's pocket. (*Id*. at 20-21.) We note, however, that just prior to the testimony of Officer Thackrey-Toole, Ferguson's counsel had been admonished by the trial court outside the presence of the jury because the content of defense counsel's opening statement implied the police officers' search was conducted improperly. (Tr. Vol. II at 247-250.) The trial court believed Ferguson's counsel had come very close to violating the trial court's Motion in Limine, which provided:

The Court, having considered the State's Motion in Limine regarding the actions of officer(s) involved in the search of Defendant being unlawful or improper, finds that such motion

should be granted. In so ruling, the Court is mindful of the Court's prior rulings in this cause regarding Defendant's motion to suppress and the renewal of said motion.

IT IS THEREFORE ORDERED that the State's Motion in Limine be and hereby is granted, and **none of the parties** hereto, nor their respective counsel, agents, representatives, nor witnesses, **shall directly or indirectly** mention, suggest, or refer to, by way of interrogation or comment, or by attempting to **convey to the jury in any manner**, regarding **the actions of law enforcement officers in conducting the search of the Defendant was unlawful or illegal**, without first obtaining the permission of the Court, and permission of the Court shall first be required even if State shall first "open the door."

Order on Motions in Limine at 1-2, Cause No. 89D01-2306-F2-15 (Jan. 13, 2025) (bold emphases added). As the trial court had admonished Ferguson's counsel just before Officer Thackrey-Toole's testimony to not again suggest the search was improper, counsel's delay of any objection until after the officer finished discussing the search is understandable.

[14] Moreover, prior to voir dire that same morning, the trial court talked to the prosecutor and defense counsel about preliminary instructions, the motion in limine, and the motion to suppress. Regarding the motion to suppress, the following unfolded:

THE COURT: Thank you. [Defense counsel], I will assume that you want to renew your client's Motion to Suppress at this time?

[DEFENSE]: Uh, yes, Your Honor. So moved.

THE COURT: Thank you. Counsel, the Court has previously heard evidence and argument on the Motion to Suppress, and the Court ruled to deny that Motion to Suppress. I want to make clear for the record: I spent a significant amount of time reviewing that prior ruling. I listened to the hearings. The ruling was made by the prior regular Judge of Wayne County Superior Court 1. As you all know, I was recently elected and have been on the bench for a short period of time. But I wanted to let everyone know and the record to reflect that I have reviewed the entire transcript. I have listened to it. I've reviewed the applicable law, and the grounds for those motions. I wanted to make it clear that I find no new grounds that warrant a change in the Court's decision, and therefore **the Motion to Suppress is again denied. The ruling will stand throughout this trial, barring any significant and unforeseen developments. The Defendant's Motion to Suppress is considered renewed and ongoing for the purposes of preserving this issue for appeal.** While I will permit counsel to raise any significant and unforeseen developments, during the trial it's unnecessary to repeatedly renew the motion for it to be properly preserved on the record. [Defense counsel], you are welcome to make objections as you feel necessary, but again **your issues are preserved for appeal**.

(Tr. Vol. II at 122-23) (bold emphases added). (*See also* Appellant's App. Vol. 2 at 33) (Trial Entry – Day One) ("The Defendant renews his motion to suppress which is again DENIED and the Court states the issue is preserved for appellate purposes.").

[15] In light of the facts that, (1) the trial court informed counsel on the first morning of trial that the suppression issue had already been preserved for appeal and (2) the trial court admonished defense counsel to not again reference the possible illegality of the police behavior during the search, we decline to hold Ferguson

waived for appeal any argument regarding the constitutionality of the search. *See Vehorn v. State*, 717 N.E.2d 869, 873 (Ind. 1999) (holding appellant adequately preserved issue for appeal without timely objection at trial because at "the pretrial hearing, the judge provided explicit assurance that an objection as to [witness's] hearsay testimony was preserved for appeal when it told defense counsel that 'even if you don't object, the Court will find . . . that your objections to this type of evidence have been timely made'").

## 2. Fourth Amendment of U.S. Constitution

[16] Ferguson first argues the methamphetamine was collected from him in violation of his Fourth Amendment[6] right to be free of unreasonable searches and seizures. The Fourth Amendment protects citizens from search or seizure absent a warrant supported by probable cause unless a well-delineated exception to the warrant requirement applies. *Tigner v. State*, 142 N.E.3d 1064, 1068 (Ind. Ct. App. 2020). "The State bears the burden of proving that an exception to the warrant requirement applies for evidence obtained during a warrantless search to be admissible at trial." *Id.*

[17] Ferguson "does not dispute the validity of the initial stop" of Hollingsworth's vehicle, (Appellant's Br. at 13), which occurred because Hollingsworth's vehicle

---

[6] The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

had an unlit taillight and Hollingsworth repeatedly failed to come to a complete stop at stop signs. *See*, *e.g.*, *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013) ("It is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer probable cause to stop the driver of a vehicle."). Nor does Ferguson challenge the manner in which Officer Thackrey-Toole checked Hollingsworth's driver's license, the car's registration, and identifying information for each passenger in the car, which are appropriate tasks for a traffic stop. *See*, *e.g.*, *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) (officer's mission during traffic stop properly includes checking driver's license, automobile registration, and proof of insurance, and determining whether outstanding warrants exist).

[18] Instead, Ferguson argues Officer Thackrey-Toole's investigative behavior at the conclusion of the traffic stop violated his Fourth Amendment right to be free of unreasonable seizure. When Officer Thackrey-Toole approached Hollingsworth at the end of the traffic stop, she informed him that she was releasing him with a warning, but then she asked for consent to search the car. According to Officer Thackrey-Toole, all three occupants of the car consented to the search. Consent is a valid exception to the Fourth Amendment's warrant requirement. *See Garcia-Torres v. State*, 949 N.E.2d 1229, 1237 (Ind. 2011) ("A warrant is not required, however, when there is consent to search.").

[19] Ferguson asks us to hold Officer Thackrey-Toole's request for consent to search was improper because, according to Ferguson, the officer's intent was to "manufacture suspicious behavior to justify further investigation." (Br. of

Appellant at 14.) However, police officers are permitted to engage in consensual encounters with citizens without implicating the Fourth Amendment. *See*, *e.g.*, *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968) ("[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."). Moreover,

> even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage – as long as the police do not convey a message that compliance with their requests is required.

*Florida v. Bostick*, 501 U.S. 429, 434-35 (1991) (internal citations omitted). Herein, when Officer Thackrey-Toole asked for consent to search, she explicitly told those in the car: "Just so you know, you don't have to let me search the car, um but I am asking your permission to do so." (Tr. Vol. III at 16.) When the occupants of the car had been so advised after the traffic stop had been completed, we cannot say the Fourth Amendment was violated. *See McLain v. State*, 963 N.E.2d 662 (Ind. Ct. App. 2012) (holding no Fourth Amendment violation occurred when officer spoke to citizen after traffic stop was complete and citizen consented to search of vehicle), *trans. denied*.

[20] Ferguson also argues Officer Thackrey-Toole should have advised him "that he was free to leave" the scene if he did not want to wait while police searched the car. (Appellant's Br. at 13.) Ferguson has not cited any authority to

demonstrate such an advisement is required. Nor, based on the facts herein, does it seem there would have been time for such an advisement prior to Ferguson creating sufficient concern for officer safety to justify a pat down. As soon as consent had been given for the search of the car, Ferguson began to move around, sweat, and show other signs of nervousness to an extent that Officer Thackrey-Toole found it "alarming[.]" (Tr. Vol. III at 17.) When asked to step out of the car, Ferguson froze and delayed cooperation. When outside the car, he repeatedly failed to keep his hands away from his waistline, which is a common location for concealing a weapon. Under the circumstances as they unfolded, officer safety necessitated a pat down of Ferguson and, thus, no Fourth Amendment violation occurred. *See*, *e.g.*, *Scisney v. State*, 55 N.E.3d 321, 325 (Ind. Ct. App. 2016) (defendant's attempts to avoid officers and reaching toward his waistband justified pat down search for officer and public safety), *trans. denied*.

## 3. Article 1, Section 11 of Indiana Constitution

[21] Ferguson also argues the evidence at issue was collected in violation of his rights under the Indiana Constitution. While the text of Article 1, Section 11[7] is nearly identical to the text of the Fourth Amendment, "we evaluate a search

---

[7] Article 1, Section 11 of the Indiana Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

under our state constitution based on the reasonableness of the conduct of the law enforcement officers under the circumstances, rather than on the expectation of privacy that is commonly associated with analysis under the Fourth Amendment." *State v. Jones*, 191 N.E.3d 878, 891 (Ind. Ct. App. 2022) (quotation marks omitted), *trans. denied*.

[22] We evaluate a search under the Indiana Constitution by balancing three factors: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005). As we engage in this balancing, we consider "the totality of the circumstances." *Hardin v. State*, 148 N.E.3d 932, 942 (Ind. 2020). Our goal is to balance Hoosiers' interest in "limit[ing] excessive intrusions by the State into their privacy[,]" *id.*, with Hoosiers' desire to live in a State able "to provide 'safety, security, and protection from crime.'" *Id.* at 943 (quoting *Holder v State*, 847 N.E.2d 930, 940 (Ind 2006)).

[23] Ferguson argues Officer Thackrey-Toole's actions were unreasonable because police had no knowledge of any violation of law aside from the traffic violations and there was no evidence of law enforcement needs, while "the seizure restrained [his] movement and the search invaded [his] personal space." (Br. of Appellant at 15.) However, Ferguson's analysis of the *Litchfield* factors conflates two distinct moments in time that would require separate constitutional analyses. The moment to which Ferguson is referring when he

alleges police had no knowledge of a violation and no law enforcement needs is the moment when Officer Thackrey-Toole asked the occupants of the car for permission to search the car, and Ferguson was not "seized" at that moment. Instead, Ferguson's seizure occurred moments later, under a much different totality of the circumstances, because Ferguson's behavior changed very quickly after consent to search the car had been given. Because Ferguson has provided only a single analysis, we address whether Officer Thackrey-Toole's request for consent to search the car after the traffic stop was reasonable under the Indiana Constitution.[8]

[24] Under the first *Litchfield* factor, we examine "the law-enforcement officers' degree of concern, suspicion, or knowledge that a violation has occurred." *Id*. at 943 (internal quotation omitted). We consider "all 'the information available to them at the time' of the search or seizure." *Id*. (quoting *Duran v. State*, 930 N.E.2d 10, 18 (Ind. 2010)). As Ferguson notes, police had no suspicion of any specific wrongdoing at the moment that Officer Thackrey-Toole requested consent to search.

---

[8] We have chosen to address this moment because two of Ferguson's arguments about *Litchfield* factors implicate this moment and because it seems fairly apparent to us that the pat down search of Ferguson withstands analysis under the Indiana Constitution due to: (1) the concern and suspicion raised by Ferguson's nervous behavior and repeated reaching for his waistband, and (2) the need of the officers to ensure the safety of themselves and the car's other occupants. *See*, *e.g.*, *Berry v. State*, 121 N.E.3d 633, 639 (Ind. Ct. App. 2019) (holding pat down search did not violated Article 1, Section 11 when, amongst other things, defendant behaved nervously, dropped his hands toward his pockets, and had a bulge in his waistband), *trans. denied*.

As for the second *Litchfield* factor – the degree of intrusion – this factor was also low, as the time required for Officer Thackrey-Toole to request consent to search was momentary.[9] Had Hollingsworth declined the officer's request, the intrusion into Ferguson's freedom and privacy would have been negligent.

Finally, under the extent-of-law-enforcement-needs factor, Ferguson argues there was "no evidence" regarding the needs of the police. (Appellant's Br. at 15.) However, as our Indiana Supreme Court has noted: "[L]aw enforcement needs in this arena are great. Intra- and international drug trafficking are significant issues facing law enforcement and public safety officials at the federal, state, and local levels." *Austin v. State*, 997 N.E.2d 1027, 1036 (Ind. 2013).

Considering the high need of law enforcement to curb the trafficking illegal drugs, the negligent intrusion into Ferguson's freedom caused by Officer Thackrey-Toole's simple request to permit a voluntary search after the traffic stop, and the low level of suspicion about the occupants in Hollingsworth's car,

---

[9] At oral argument, Ferguson asked us to expand the philosophy and holding of *Pirtle v. State*, 323 N.E.2d 634, 640 (Ind. 1975), to the circumstances herein. In *Pirtle*, our Indiana Supreme Court held a citizen in police custody cannot give valid consent to a search unless the citizen has been afforded the opportunity to obtain the advice of counsel. *Id*. Ferguson suggested police similarly should be required to provide citizens with the opportunity to speak with counsel prior to consenting to the search of an automobile. However, *Pirtle* applies only when citizens are in custody, which requires "'formal arrest' or a 'restraint on freedom of movement of the degree associated with a formal arrest.'" *Meredith v. State*, 906 N.E.2d 867, 873 (Ind. 2009) (quoting *Luna v. State*, 788 N.E.2d 832, 833 (Ind. 2003)). A traffic stop is an investigatory stop that does not place a citizen "in custody, and thus no *Pirtle*… warning was necessary." *Id*. at 874. Nor, therefore, could we mandate such a warning when the encounter between police and citizen is consensual because the traffic stop was completed. *See, e.g.*, *Browder v. State*, 77 N.E.3d 1209, 1213 n.2 (Ind. Ct. App. 2017) ("the officer was not required to give the [*Pirtle*] warning because Browder was not in custody when he told the officer that he could search the car"), *trans. denied*.

we hold Officer Thackrey-Toole's request for permission to search the car –
when tempered by her reminder that there was no obligation to consent – did
not violate Article 1, Section 11 of the Indiana Constitution. *See*, *e.g.*, *McLain*,
963 N.E.2d at 670 (no violation of Indiana Constitution when defendant
voluntarily consented to request to search after traffic stop was completed).

## Conclusion

[28] Because the search that occurred did not violate either the Fourth Amendment
or Article 1, Section 11, the trial court did not abuse its discretion by admitting
the methamphetamine seized from Ferguson's pocket. We therefore affirm his
conviction of Level 2 felony dealing in methamphetamine.

[29] Affirmed.

Weissmann, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

Nathaniel S. Connor
The Law Office of Nathaniel S. Connor, LLC
Winchester, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana